Alan P. Block (SBN 143783)
McKool Smith, P.C.
300 South Grand Avenue
Ste 2900
Los Angeles, CA 90071
Phone: 213-694-1054
Fax: 213-694-1234
Email: ablock@mckoolsmith.com

Attorneys for Defendants
BROADCOM, INC. and VMWARE, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NETFLIX, INC.<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM INC., VMWARE LLC<br><br>Defendants. | Case No. 5:25-cv-09324-PCP<br><br>**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**<br><br>Date: April 24, 2025<br>Time: 10:00 AM<br>Dept: Courtroom 8<br>Judge: Hon. P. Casey Pitts |

McKool Smith, P.C.
Los Angeles, CA

MOTION TO DISMISS

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ..................................................................................................1

II.   LEGAL STANDARDS ........................................................................................3

    A.    Motion to Dismiss under Rule 12(b)(6) ............................................3
    B.    Patent-Eligible Subject Matter ...........................................................3
    C.    Induced Infringement .........................................................................4
    D.    Contributory Infringement .................................................................5
    E.    Willful Infringement...........................................................................6

III.  ARGUMENT ........................................................................................................6

    A.    The '424, '707, and '891 Patents are Ineligible under Section 101 ....6

        1.    *Alice* Step One: The '424, '707, and '891 Patents are Directed to the Abstract Idea of Collecting and Analyzing Information ...............................................................................9

            a.    The Claimed "Observing" and "Determining" Steps Highlight the Abstract Nature of the VMM Patent Claims.......................................................................10
            b.    The VMM Patent Claims Incorporate Result-Oriented Functional Language That Confirms Their Abstractness................................................................11
            c.    Netflix Cannot Salvage the VMM Patent Claims by Pointing to Unclaimed Details from the Patent Specifications ...........................................................12

        2.    *Alice* Step Two: The '424, '707, and '891 Patents Do Not Recite an Inventive Concept..................................................12

    B.    The '893 Patent is Ineligible under Section 101 ..............................13

        1.    *Alice* Step One: The '893 Patent is Directed to the Abstract Idea of Managing the Workload of Multiple Computing Resources................................................................14

        2.    *Alice* Step Two: The '893 Patent Does Not Recite an Inventive Concept..................................................................16

    C.    The '122 Patent is Ineligible under Section 101 ..............................16

        1.    *Alice* Step One: The '122 Patent is Directed to the Abstract Idea of a GUI ........................................................17

        2.    *Alice* Step Two: The '122 Patent Does Not Recite an Inventive Concept..................................................................18

McKool Smith, P.C.
Los Angeles, CA

-i-

D.    The Complaint Fails to State a Claim for Induced Infringement ......19

    1.    The Complaint Fails to Plausibly Allege Defendants' Knowledge of Infringement of Any of the Asserted Patents 19

    2.    The Complaint Does Not Even Sufficiently Allege Knowledge of the Asserted Patents Themselves...................20

E.    The Complaint Fails to State a Claim for Contributory Infringement ..........................................................................22

F.    The Complaint Fails to State a Claim for Willful Infringement .......23

G.    The Indirect and Willful Infringement Claims Against Broadcom Should be Dismissed Because Any Knowledge of the Asserted Patents by VMware Can Not Imputed to Broadcom.........................24

H.    Netflix Cannot Rely On Its Complaint To Support Post-Complaint Indirect and Willful Infringement Claims ..........................................25

IV.    CONCLUSION ..........................................................................25

McKOOL SMITH, P.C.
LOS ANGELES, CA

MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ............................................................... 4

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ........................................................ 11, 15

*Affinity Labs of Tex, LLC. v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ............................................................... 7

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
    No. 19-cv-05903-JST, 2020 WL 6129139 (N.D. Cal. Sept. 2, 2020) .................. 13

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
    97 F.4th 1371 (Fed. Cir. 2024) ............................................................... 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ................................................................... *passim*

*Am. Axle & Mfg. v. Neapco Holdings LLC*,
    967 F.3d 1285 (Fed. Cir. 2019) ........................................................ 12, 15

*Appistry, Inc. v. Amazon.com, Inc.*,
    2015 WL 4210890 (W.D. Wash. July 9, 2015), *aff'd* 676 F. App'x 1007 (Fed.
    Cir. 2017) .............................................................................. 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................. 3

*Atticus Rsch. Corp. v. MMSoft Design Ltd*,
    No. 4:17-CV-3387, 2018 WL 6272762 (S.D. Tex. Sept. 6, 2018) ...................... 10

*In re Bd. of Trs. of the Leland Stanford Junior Univ.*,
    989 F.3d 1367 (Fed. Cir. 2021) ............................................................... 9

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ............................................................... 4

*Broadband iTV, Inc. v. Amazon.Com, Inc.*,
    113 F.4th 1359 (Fed. Cir. 2024) ........................................................ 17

*Broadcom Corp. v. Netflix, Inc.*,
    No. 3:20-cv-4677, Dkt. 707 (N.D. Cal. Nov. 12, 2024) ............................... 1

*BWB Co. Ltd. v. Alibaba Grp. (US) Inc.*,
    No. 3:23-cv-05917-JD, 2024 WL 3748340 (N.D. Cal. Aug. 8, 2024) .................. 4

McKool Smith, P.C.
Los Angeles, CA

*CA Inc. et al. v. Netflix, Inc.*,
    No. 3:33-cv-00373-EMC (N.D. Cal.), The *CA* ...................................................... 1

*Coho Licensing LLC v. Glam Media, Inc.*,
    2017 WL 6210882 (N.D. Cal. Jan. 23, 2017), *aff'd*, 710 F. App'x 892 (Fed. Cir.
    2018) ....................................................................................................................... 15, 16

*Commil USA, LLC v. Cisco Sys.*,
    575 U.S. 632 (2015) ..................................................................................................... 5, 22

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................................................ 6

*Credit Acceptance v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ............................................................................ 18

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021) .............................................................. 11, 15, 18

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*,
    638 F. Supp. 3d 1088 (N.D. Cal. 2022) ............................................................ 20

*directPacket Research, Inc. v. Polycom Inc.*,
    No. 3:19-cv-03918-JD, 2023 WL 6301066 (N.D. Cal. Sept. 26, 2023).............. 11

*EcoFactor, Inc. v. Google LLC*,
    No. 24-cv-00175-JST, 2024 WL 4819260 (N.D. Cal. Nov. 18, 2024) ................. 4

*Enovsys LLC v. Lyft, Inc.*,
    No. 23-cv-05157-EJD, 2024 WL 3049452 (N.D. Cal. June 17, 2024) ................. 4

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................. 3, 9, 10

*Enovsys LLC v. Lyft, Inc.*,
    No. 23-cv-05157-EJD, 2024 WL 3049452 (N.D. Cal. June 17, 2024) ................. 4

*Ericsson v. TCL Communication Technology Holdings, Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020) .............................................................. 12, 15, 18

*Free Stream Media Corp. v. Alphonso Inc.*,
    996 F.3d 1355 (Fed. Cir. 2021) ........................................................................ 12

*In re Gale*,
    856 F. App'x 887 (Fed. Cir. 2021) .................................................................... 10

*Garrett v. TP-Link Research Am. Corp.*,
    No. 20-cv-03491-SI, 2020 WL 5517202 (N.D. Cal., Sept. 14, 2020).................. 3

*Geoscope Techs. Pte. Ltd. v. Google LLC*,
    692 F. Supp. 3d 566 (E.D. Va. 2023) .......................................................... 10, 11

MOTION TO DISMISS

McKool Smith, P.C.
Los Angeles, CA

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) ...................................................................... 5

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ........................................................................ 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016) ........................................................................ 6

*iCharts LLC v. Tableau Software, LLC*,
    No. C 24-03157 WHA, 2024 WL 5093074 (N.D. Cal. Dec. 12, 2024) ................ 4

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) .................................................... 19

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ................................................ 11, 21

*Intellectual Ventures I v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) .................................................... 7

*Internet Pats. Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) .................................................. 17

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) .................................................. 18

*Kawasaki Jukogyo K.K. v. Rorze Corp.*,
    677 F. Supp. 3d 1079 (N.D. Cal. 2023) ........................................ 5, 22

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) .................................................. 11

*Koss Corp. v. Plantronics Inc.*,
    No. 21-cv-03854-JST, 2022 WL 19975244 (N.D. Cal. Nov. 16, 2022) .............. 12

*Lifetime Indus. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017) ................................................ 5, 20

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ........... 21, 23

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014) .................................................... 5

*Miller Mendel, Inc. v. City of Anna, Texas*,
    107 F.4th 1345 (Fed. Cir. 2024) ................................................ 11

*Mobile Acuity Ltd. v. Blippar Ltd.*,
    110 F.4th 1280 (Fed. Cir. 2024) ................................................ 4

MOTION TO DISMISS

*Netflix, Inc. v. CA, Inc. d/b/a CA Technologies et al.*,
    No. 3:21-cv-03649 (N.D. Cal.) ............................................................................. 1

*P2I Ltd. v. Favored Tech. USA Corp.*,
    No. 23-cv-01690-AMO, 2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ......... 6, 23

*Parker v. Flook*,
    437 U.S. 584 (1978) ............................................................................................. 9

*PlanetID, LLC v. Digify, Inc.*,
    No. 19-cv-04615-JST, 2021 WL 567371 (N.D. Cal. Jan. 12, 2021) ................... 12

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    843 F.3d 1315 (Fed. Cir. 2016) ........................................................................... 5

*Radware, Ltd. v. A10 Networks, Inc.*,
    No. C-13-02021-RMW, 2014 WL 61047 (N.D. Cal. Jan. 7, 2014) .................... 22

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    No. CV 17-1692-CFC-SRF, 2018 WL 6521978 (D. Del. Dec. 12, 2018) ........... 11

*Redwood Techs., LLC v. Netgear, Inc.*,
    738 F. Supp. 3d 511 (D. Del. 2024) .................................................................... 11

*Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*,
    No. 3:19-cv-02659-JD, 2020 WL 1307016 (N.D. Cal. Mar. 19, 2020) .............. 13

*In re Rudy*,
    956 F.3d 1379 (Fed. Cir. 2020) .......................................................................... 10

*SafeCast Ltd. v. Google, LLC*,
    703 F. Supp. 3d 1041 (N.D. Cal. 2023) .............................................................. 11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ........................................................................... 9

*Simio, LLC v. Flexsim Software Prods.*,
    983 F.3d 1353 (Fed. Cir. 2020) ......................................................................... 18

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022) ....................................................... 5, 21, 25

*Splunk Inc. v. Cribl, Inc.*,
    662 F. Supp. 3d 1029 (N.D. Cal. 2023) .......................................................... 6, 25

*Tech. in Ariscale, LLC v. Razer USA, Ltd.*,
    703 F. Supp. 3d 1153 (C.D. Cal. 2023) ............................................................... 3

*TJTM Techs., LLC v. Google LLC*,
    No. 24-cv-01232-TLT, 2024 WL 5106443 (N.D. Cal. Oct. 21, 2024) ................. 4

McKool Smith, P.C.
Los Angeles, CA

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) ............................................................. 18

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1378 (Fed. Cir. 2019) ......................................................... 3, 12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ....................................................... 13, 16

*Ultramercial Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................. 19

*Vasudevan Software, Inc. v. Tibco Software, Inc.*,
   No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012)................... 21

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
   698 F. Supp. 3d 1145 (N.D. Cal. 2023) ................................................... 5

*VLSI Tech. LLC v. Intel Corp.*,
   2019 WL 1349468 (D. Del. Mar. 26, 2019) ............................................ 25

*VLSI Tech. LLC v. Intel Corp.*,
   706 F. Supp. 3d 953 (N.D. Cal. 2023) ................................................... 25

*Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc.*,
   No. 23-cv-05792-RFL, 2024 WL 3422598 (N.D. Cal. July 16, 2024) .......... 20, 21

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
   528 F. Supp. 3d 247 (D. Del. 2021) ...................................................... 25

**Statutes**

35 U.S.C. § 101............................................................................. *passim*

35 U.S.C. § 271(c) ......................................................................... 5, 22

35 U.S.C. § 284............................................................................... 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................ 1, 3

U.S. Patent No. 11,183,713 ................................................................ 22

McKool Smith, P.C.
Los Angeles, CA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith, P.C.
Los Angeles, CA

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 24, 2025, at 10:00 a.m. in Courtroom 8, 4ᵗʰ Floor, 280 First Street, San José, California, before the Honorable P. Casey Pitts, Defendants Broadcom Inc. ("Broadcom") and VMware LLC ("VMware") will, and hereby do, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendants' complaint. This motion is based upon this Notice; the following Memorandum of Points and Authorities; the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

Defendants seek an order dismissing with prejudice Plaintiff Netflix, Inc.'s ("Netflix") Complaint in its entirety for its failure to state a claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This lawsuit is a meritless retaliatory case designed to gain leverage in connection with Netflix's rampant infringement of patents owned by Broadcom-related entities.  A Broadcom entity (Broadcom Corp.) sued Netflix for patent infringement in 2020, and trial in that case is set for June 2, 2025 before Judge Donato.  *Broadcom Corp. v. Netflix, Inc.*, No. 3:20-cv-4677, Dkt. 707 (N.D. Cal. Nov. 12, 2024).  Other Broadcom entities sued Netflix for patent infringement in 2021, and that case (as well a mirror image declaratory judgment case filed by Netflix) is pending before Judge Chen. *CA Inc. et al. v. Netflix, Inc*., No. 3:33-cv-00373-EMC (N.D. Cal.).[1]  Having built its business by trampling the hard earned, valuable patent rights of world-leading technology companies such as Broadcom Corp. and CA Inc., and rather than pay for its unlicensed use of such patents, Netflix instead responded by buying worthless patents for the sole purpose of suing Broadcom.

On November 25, 2024, Netflix acquired a portfolio of U.S. patents of dubious provenance from a company in the British Virgin Islands, which had in turn acquired the patents when they were cast off by the original owner, likely in a fire sale.  Less than one month later, on December

---

[1] The *CA* case was originally field in the Eastern District of Texas and subsequently transferred. That case, as well as Netflix's declaratory judgment action, *Netflix, Inc. v. CA, Inc. d/b/a CA Technologies et al.*, No. 3:21-cv-03649 (N.D. Cal.) are currently stayed pending completion of inter partes review ("IPR") proceedings on the asserted patents.

McKool Smith, P.C.
Los Angeles, CA

23, 2024, it filed this case against Broadcom and its subsidiary VMware LLC ("VMware") accusing them of infringing five of those patents. The Court should recognize this case for what it is – an attempt by Netflix to distract from its own infringement and harass Broadcom by forcing it to expend resources defending a worthless case. The Court can and should put an end to this case now, before it too expends its scarce resources indulging Netflix's folly. For example, as addressed in this motion, each of the five asserted patents is directed to ineligible subject matter under 35 U.S.C. § 101, and thus should now be held invalid on this basis in view of numerous Federal Circuit cases that have affirmed dismissal of similar cases at the outset on eligibility grounds.

The '424, '707, and '891 Patents are directed to the abstract idea of collecting and analyzing information. That the claims specifically concern information regarding usage of shared resources in a virtual machine environment is immaterial to the eligibility analysis. Humans have long applied the concept of allocating usage of shared resources in all manner of environments, and there is no claimed improvement to the computer itself, nor any inventive concept.

The '893 Patent is directed to the abstract idea of managing the workload of multiple computing resources. Here again, humans have long applied the concept of managing the workload of a set of resources to determine how best to allocate demands for use of such resources, and there is no inventive concept here either.

The '122 Patent is directed to the abstract idea of a graphical user interface or "GUI" for managing virtual machines. Its claims recite no technical details or improvements to the computers themselves, but merely claim the high-level idea of GUIs used to manage virtual machines. This patent too is directed to ineligible subject matter.

If the Court invalidates all the asserted patents, it need not address the other issues raised in this motion—the Complaint's deficient claims for indirect and willful infringement. But if the Court declines to now invalidate one or more of the patents, it should nonetheless dismiss all the claims for willful and indirect infringement because the Complaint has no plausible allegations that Defendants had knowledge of infringement, or any reason to believe there was infringement, which is fatal to such claims. This is particularly true for Broadcom, because Netflix's allegations that it was aware of the patents are based on imputing knowledge from affiliates, which is insufficient.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This 'facial plausibility' standard requires the plaintiff to allege facts that add up to 'more than a sheer possibility that a defendant has acted unlawfully.'" *Garrett v. TP-Link Research Am. Corp.*, No. 20-cv-03491-SI, 2020 WL 5517202, at *2 (N.D. Cal., Sept. 14, 2020) (quoting *Iqbal*, 556 U.S. at 678). "In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *Garrett*, 2020 WL 5517202, at *2 (citation omitted). "However, a district court is not required to accept as true 'allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

### B.    Patent-Eligible Subject Matter

"Abstract ideas" are excepted from patent protection under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). To evaluate patent eligibility, the Supreme Court in *Alice* set forth a two-step framework. *Id.* at 218. First, the Court must "evaluate the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (cleaned up). "Determining whether a claim is directed to an abstract idea (Step One) is a question of law." *Tech. in Ariscale, LLC v. Razer USA, Ltd.*, 703 F. Supp. 3d 1153, 1162 (C.D. Cal. 2023). The "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016).

If the claims are directed to a patent-ineligible concept at step one, the Court proceeds to step two to determine whether the claims nonetheless add an "inventive concept" sufficient to "transform" that abstract idea into "a patent-eligible application." *Alice*, 573 U.S. at 221. But

-3-

McKool Smith, P.C.
Los Angeles, CA

1  "stating an abstract idea while addinvg the words 'apply it' is not enough for patent eligibility. Nor

2  is limiting the use of an abstract idea to a particular technological environment." *Id*. at 223.  Instead,

3  step two "is satisfied when the claim limitations involve more than performance of well-understood,

4  routine, and conventional activities previously known to the industry." *Berkheimer v. HP Inc.*, 881

5  F.3d 1360, 1367 (Fed. Cir. 2018).

6        Patent eligibility may be decided on a 12(b)(6) motion to dismiss "when there are no factual

7  allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*

8  *Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  *Alice* step

9  two may occasionally involve "underlying issues of fact" regarding whether a claim element is

10  routine or conventional. *Berkheimer*, 881 F.3d at 1365.  However, "[p]atent eligibility has in many

11  cases been resolved on motions to dismiss or summary judgment." *Id.* at 1368.  Indeed, courts in

12  this District continue to routinely dismiss patent-ineligible claims on the pleadings.  *See, e.g.,*

13  *iCharts LLC v. Tableau Software, LLC*, No. C 24-03157 WHA, 2024 WL 5093074, at *1 (N.D.

14  Cal. Dec. 12, 2024); *EcoFactor, Inc. v. Google LLC*, No. 24-cv-00175-JST, 2024 WL 4819260, at

15  *1 (N.D. Cal. Nov. 18, 2024); *TJTM Techs., LLC v. Google LLC*, No. 24-cv-01232-TLT, 2024 WL

16  5106443, at *1 (N.D. Cal. Oct. 21, 2024); *BWB Co. Ltd. v. Alibaba Grp. (US) Inc.*, No. 3:23-cv-

17  05917-JD, 2024 WL 3748340, at *1 (N.D. Cal. Aug. 8, 2024); *Enovsys LLC v. Lyft, Inc.*, No. 23-

18  cv-05157-EJD, 2024 WL 3049452, at *1 (N.D. Cal. June 17, 2024).  And the Federal Circuit has

19  continued to affirm decisions holding patents ineligible as a matter of law. *See, e.g., Mobile Acuity*

20  *Ltd. v. Blippar Ltd*., 110 F.4th 1280, 1284 (Fed. Cir. 2024); *AI Visualize, Inc. v. Nuance Commc'ns,*

21  *Inc.*, 97 F.4th 1371, 1374 (Fed. Cir. 2024).

22        Here Netflix effectively concedes that no fact issues stand in the way of the Court granting

23  this motion, because Netflix does not even allege that any of the claim limitations, whether

24  considered alone or as an ordered combination, involve anything more than "performance of well-

25  understood, routine, and conventional activities previously known to the industry."

26      **C.**    **Induced Infringement**

27      A patentee asserting induced infringement under § 271(b) must show the following three

28  elements: "(1) a third party directly infringed the asserted claims of the [asserted] patents; (2) [the

McKool Smith, P.C.
Los Angeles, CA

-4-

accused infringer] induced those infringing acts; and (3) [the accused infringer] knew the acts it induced constituted infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1332 (Fed. Cir. 2016); *accord Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, 698 F. Supp. 3d 1145, 1148 (N.D. Cal. 2023). The pleading requirements are strict. "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

Knowledge of the specific asserted patents is required; "[m]ere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough." *Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643 (N.D. Cal. 2022). A claimant must plead that the accused infringer took affirmative acts to encourage another party to infringe, *Power Integrations*, 843 F.3d at 1332; it is not enough to merely plead that the third party itself infringed. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). And a claimant must plead that the accused infringer had specific intent to cause infringement, and knew that the acts were infringing. *Lifetime Indus.*, 869 F.3d at 1379.

### D.    Contributory Infringement

"Whoever offers to sell or sells within the United States or imports into the United States a component . . . or a material or apparatus for use in practicing a patented process . . . knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

"Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639, (2015) (citation omitted); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 763 (2011). A complaint that does not sufficiently allege such knowledge should be dismissed. *See, e.g., Kawasaki Jukogyo K.K. v. Rorze Corp.*, 677 F. Supp. 3d 1079, 1088 (N.D. Cal. 2023).

McKool Smith, P.C.
Los Angeles, CA

1

### E.    Willful Infringement

2     35 U.S.C. § 284 authorizes enhanced damages in "egregious cases of misconduct beyond

3    typical infringement."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016).  Such

4    damages are designed to punish wrongdoers for conduct that has been characterized as "willful,

5    wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—

6    characteristic of a pirate." *Id*. at 103-04.  For willful infringement, both "knowledge of the patent

7    and knowledge of infringement must be pled with plausibility." *P2I Ltd. v. Favored Tech. USA

8    Corp.*, No. 23-cv-01690-AMO, 2024 WL 4294652, at *9 (N.D. Cal. Sept. 24, 2024) (citing *Dali

9    Wireless, Inc. v. Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088, 1095 (N.D. Cal. 2022)).

10   ## III.    ARGUMENT

11   ### A.    The '424, '707, and '891 Patents are Ineligible under Section 101

12     The '424, '707, and '891 Patents (the "VMM patents") are each directed to the abstract idea

13   of collecting and analyzing information.  The VMM patents were all filed on the same day in 2005,

14   name the same two inventors, and include substantially the same text and diagrams.  The VMM

15   patents explain that a virtual machine monitor, or "VMM," is "a layer of software that runs on a

16   host platform and provides an abstraction of a complete computer system to higher-level

17   software." '424 Patent, 1:52-54.  In other words, a VMM "aids in subdividing the ample resources

18   of a modern computer and creating the illusion of multiple virtual machines each running a separate

19   OS instance." *Id*. at 1:61-64.  Both virtual machines ("VM") and VMMs were well-known

20   technology at the time of the patents, and the patents themselves acknowledge that "[m]any such

21   VMMs [were] available in the art," including that of Defendant VMware. *Id*. at 1:58-59.[2]

22     The only claim of each VMM patent discussed and asserted in the Complaint is claim 1.[3]

23   Compl. ¶¶ 24-26, 29-31, 34-36, 56, 114, 164.  Claim 1 of each patent reads as follows:

24

25   [2] VMware's predecessor, VMware, Inc., was incorporated in 1998 and "pioneered the
     development and application of virtualization technologies with x86 server-based computing,
26   separating application software from the underlying hardware." Ex. C at 3.

27   [3] For each patent, this motion addresses the same claim addressed in the Complaint as a
     representative claim. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
28   Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (upholding district court's analysis that used
     representative claim); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1041-42 (N.D. Cal. 2023)

| '424 Patent | '707 Patent | '891 Patent |
|---|---|---|
| 1. A method comprising:<br><br>**observing communication** from plurality of paravirtualized virtual machines (VMs) to driver domains that are isolated from the plurality of VMs, the communication comprising at least one resource request from the plurality of VMs to the driver domains, comprising observing communication from said plurality of VMs requesting access to a shared resource that is accessible by the plurality of VMs, wherein a device driver for said shared resource is arranged in said driver domains; and<br><br>**determining,** based on said communication between the plurality of VMs and the plurality of driver domains, **CPU utilization** of said plurality of driver domains attributable to the plurality of VMs, including determining a share of CPU execution attributed to each of the VMs during a predetermined time interval. | 1. A method comprising:<br><br>**observing,** in a computer, **communication** from a virtual machine (VM) to a domain in which a device driver for a shared resource resides, wherein the domain is separate from a virtual machine monitor (VMM);<br><br><br><br>**determining,** in the computer and based on said communication, **CPU utilization** of said domain attributable to said VM;<br><br>**determining,** for the VM, **CPU utilization** allocated by a scheduler to the VM; and determining, for the VM, total CPU utilization attributable to the VM by summing the determined CPU utilization allocated to the VM by the scheduler and the determined CPU utilization of the domain attributable to the VM. | 1. A method comprising:<br><br>**observing communication** from a given virtual machine (VM) of a plurality of VMs, to a virtual machine monitor (VMM), by observing communication from said VM that is requesting access to a resource, as an access request for said VM by said VMM; and<br><br><br><br>**determining,** based on said communication, **utilization of the CPU** by said VMM specifically attributable to said VM, and not attributable to any other of the plurality of VMs, wherein the utilization of the CPU by said VMM is the utilization of the CPU by said VMM performed for processing said access request for said VM by said VMM. |

Compl. ¶¶ 24, 29, 34 (emphasis added).

When "[s]tripped of excess verbiage," the claimed concept for each claim is straightforward. *Affinity Labs of Tex, LLC. v. DIRECTV, LLC*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016); *Intellectual Ventures I v. Capital One Fin. Corp.*, 850 F.3d 1332, 1339-40 (Fed. Cir. 2017). Each claimed method includes only two steps, both of which are abstract. The methods first "observ[es]"

(treating the first claim of each asserted patent as representative for Section 101 purposes where plaintiff "mapped . . . only the first claim of each asserted patent [] in the complaint").

McKool Smith, P.C.
Los Angeles, CA

communication from each virtual machine requesting resources, and then uses those communications to "determine[]" how much CPU usage is attributable to each virtual machine.

As the patents explain, the "problem" they purportedly address is not any shortcoming in the VMs or VMMs themselves, but one of information accuracy. According to the patents, because some CPU utilization (such as that of shared device drivers) is caused by an individual virtual machine but occurs in the VMM or a separate driver domain, simply measuring the CPU allocation of the virtual machines themselves "often fails to reveal the 'true' usage of the CPU that is attributable to different VMs." '424 Patent, 2:66-67. Each patent includes an identical recitation of what it "desires" to accomplish: "Thus, a desire exists for a system and method for accurately determining CPU utilization that is attributable to VMs on a system." E.g., '424 Patent, 3:1-3.

This is not a technical problem, and the patents do not describe it as such. Nor do the patents or the Complaint allege that more accurate utilization information improves the operation of the VMs or VMMs. Indeed, the Complaint, quoting from the patents, admits that the benefits supposedly provided are "assistance in a whole variety of ***management tasks***" concerning the VMs. Complaint ¶¶ 25, 30, 35 (emphasis added). For the '891 Patent, the purported benefits also include "assistance in ***billing***." Complaint ¶35 (emphasis added). Netflix thus concedes that the purported problem/solution of the VMM Patent is not technical, but administrative.

The specification of the VMM patents describes a series of mathematical formulas that take usage data from virtual machines and calculate overall CPU utilization for each VM. Figure 6 of the patents sets forth a series of formulas and calculations for this purpose. And many of the other claims include such formulas. For example, claims 13, 16, 18, and 19 of the '424 Patent, claims 26 and 28 of the '707 Patent, and claims 19 and 24 of the '891 Patent include formulas from Figure 6. But none of these claims is asserted or discussed in the Complaint, nor alleged to impact the eligibility analysis, and for good reason. Whether or not a formula is recited in the claim, it does not change the fact that the VMM patent claims are all directed to the same abstract idea.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

1. ***Alice* Step One: The '424, '707, and '891 Patents are Directed to the Abstract Idea of Collecting and Analyzing Information**

The focus of the methods claimed by the VMM patents is simply collecting (*i.e.*, "observing") and analyzing (*i.e.*, "determining") information so as to allocate usage of shared resources and provide, *e.g.*, "assistance in billing." Complaint ¶35. But observing individual usage of a shared resource and accounting for its contribution to total costs is indisputably a conventional, well-known practice across a wide range of fields. For example, many law firms allocate and bill costs of a Westlaw or Lexis subscription based on the observed usage of the service on behalf of each client. Hotels bill guests not just for the rooms assigned to them, but also observe their requests for the use of shared resources like spaces in a parking garage or dishes ordered at a hotel restaurant, determine the associated costs, and add them to the guest's bill. Many apartments and homeowner's associations observe the residents' individual usage of shared facilities, like water, trash, electricity, heat, or party spaces, and calculate the cost attributable to each resident to add to the bill.

Methods for analyzing or processing information—even if they incorporate novel mathematical formulas—have long been held unpatentable. *See Gottschalk v. Benson*, 409 U.S. 63, 71-72 (1972) (mathematical algorithm to convert binary-coded decimal numerals into pure binary code is unpatentable abstract idea); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (mathematical formula for computing "alarm limits" in a catalytic conversion process is unpatentable abstract idea). Even accepting that the claimed methods improve the accuracy of calculations for determining CPU utilization for VMs, such an advance "lies entirely in the realm of abstract ideas" and is "ineligible for patenting." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (claims directed to "nothing but a series of mathematical calculations based on selected information and the presentation of the results of those calculations"); *see also In re Bd. of Trs. of the Leland Stanford Junior Univ.*, 989 F.3d 1367, 1372 (Fed. Cir. 2021) (claims directed to a "method for receiving certain types of genetic data and processing the data by performing mathematical calculations and statistical modeling" ineligible).

The claims are similar to those held abstract in *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). In *Electric Power*, the Federal Circuit concluded that the claimed

-9-

method for detecting events in a power grid was directed to an abstract idea and thus patent ineligible. Similar to the claims here, the claims in *Electric Power* focused on collecting data, analyzing the data, and then "deriving a composite indicator of reliability." *Id*. at 1352. The court explained that analyzing information "by [the] steps people go through in their minds" or by "mathematical algorithms" is well within the "abstract-idea category." *Id*. at 1353-54.

Similarly, in *In re Gale* the Federal Circuit held that "(1) collecting information (here, receiving messages and reading their metadata), (2) analyzing the information (here, calculating a usage pattern and determining its compliance with a predetermined usage pattern), and (3) reporting the results" was patent ineligible. *In re Gale*, 856 F. App'x 887, 889 (Fed. Cir. 2021). Here too, the claims are directed to collecting information about the operation of a system, analyzing it, and arriving at a result. That is an abstract idea. "The Federal Circuit has consistently concluded that claims requiring the mere collection, analysis, and outputting of data are directed to patent-ineligible subject matter." *Geoscope Techs. Pte. Ltd. v. Google LLC*, 692 F. Supp. 3d 566, 575-76 (E.D. Va. 2023) (collecting cases).

### a. The Claimed "Observing" and "Determining" Steps Highlight the Abstract Nature of the VMM Patent Claims

The "observing" and "determining" steps of the claims confirm their abstract nature. *In re Rudy*, 956 F.3d 1379, 1385 (Fed. Cir. 2020) ("observing water clarity, measuring light transmittance, and selecting the color of the hook to be used" are abstract "mental processes akin to data collection or analysis"). "[A] system of observing, analyzing, monitoring, and alerting is an abstract idea" and "can be done entirely by the human mind using pen and paper." Similarly, observing an error message, notifying a remote user, and taking a prescribed action if the user does not respond" is "an abstract idea under the framework set by *Alice*." *Atticus Rsch. Corp. v. MMSoft Design Ltd*, No. 4:17-CV-3387, 2018 WL 6272762, at *7 (S.D. Tex. Sept. 6, 2018).

Indeed, "observing" data can be performed by humans using pencil and paper. By observing a list of VM requests in a given time interval, the individual utilization could be computed by hand for each VM. Where "there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper," they are directed to an abstract idea.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016). As this Court has noted, mere "tools to automate abstract processes that humans could theoretically (if less efficiently) also accomplish on their own," where the "claims are not directed to hardware or software changes that improve the functioning of the computer . . . itself," are not patent eligible. *SafeCast Ltd. v. Google, LLC*, 703 F. Supp. 3d 1041, 1045 (N.D. Cal. 2023) (cleaned up).

With respect to "determining," as the Federal Circuit recently noted, claims "directed to receiving, storing, transmitting, determining, selecting, and generating information" are "in the 'familiar class of claims directed to a patent-ineligible concept.'" *Miller Mendel, Inc. v. City of Anna, Texas*, 107 F.4th 1345, 1352 (Fed. Cir. 2024). "Determining location based on data," for example, is also an abstract idea. *Geoscope*, 692 F. Supp. 3d at 575. So is "determining eligibility for social security disability insurance . . . benefits." *In re Killian*, 45 F.4th 1373, 1378-79 (Fed. Cir. 2022) (affirming patent ineligibility), "determining and using a modulation method to generate data," *Redwood Techs., LLC v. Netgear, Inc.*, 738 F. Supp. 3d 511, 518–19 (D. Del. 2024), and "determining a parameter, selecting an encoder, and decoding." *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 17-1692-CFC-SRF, 2018 WL 6521978, at *12 (D. Del. Dec. 12, 2018).

### b.     The VMM Patent Claims Incorporate Result-Oriented Functional Language That Confirms Their Abstractness

Nor can Netflix assert that the claims are directed to a concrete method that avoids an adverse step one finding. The claimed "determining, based on . . ." steps of the claims are devoid of any specifics as to *how* the determining is actually performed, and consist solely of classic, result-oriented functional language that further demonstrates the claims are directed to an abstract idea. "The purely functional nature of [a] claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016); *see also cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) ("[T]he claims provide no useful guidance as to how this purported function is achieved and thus cannot be directed to a technological solution."); *directPacket Research, Inc. v. Polycom Inc.*, No. 3:19-cv-03918-JD, 2023 WL 6301066 (N.D. Cal. Sept. 26, 2023) ("cursory and functional descriptions do not amount to a 'specific device.'").

-11-

McKool Smith, P.C.
Los Angeles, CA

c.    **Netflix Cannot Salvage the VMM Patent Claims by Pointing to Unclaimed Details from the Patent Specifications**

The Complaint points to details from the specification and includes conclusory assertions of technical improvements based thereon in a futile attempt to avoid invalidity.  Compl. ¶¶ 24-27, 29-32, 34-37.  But the Federal Circuit has "repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis."  *Am. Axle & Mfg. v. Neapco Holdings LLC*, 967 F.3d 1285, 1293 (Fed. Cir. 2019).  "Even assuming the specification sufficiently discloses how" a technological solution could work, a patent is still ineligible where "the asserted claims nonetheless do not recite an improvement in computer functionality" and "do not incorporate any such methods" in the claims themselves.  *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1364 (Fed. Cir. 2021).  "While the specification may be 'helpful in illuminating what a claim is directed to ... the specification must always yield to the claim language' when identifying the 'true focus of a claim.'"  *Ericsson v. TCL Communication Technology Holdings, Ltd.*, 955 F.3d 1317, 1325 (Fed. Cir. 2020) (citation omitted).  "[Evaluating] the focus of the claimed advance over the prior art" confirms that "the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."  *See Trading Techs.*, 921 F.3d at 1384.

2.    ***Alice* Step Two: The '424, '707, and '891 Patents Do Not Recite an Inventive Concept**

Because the claims are directed to an abstract idea, the analysis proceeds to determine whether there is an inventive concept.  Here, nothing in the claims transforms them into patent-eligible subject matter.  All that is required to implement the abstract idea are standard, off-the-shelf computers and virtual machine software.  The patents explain that they can be implemented using open-source Xen virtual machine software, which runs on generic, off-the-shelf computers.  '424 Patent, 2:45-55, 9:55-60, 10:10-14, 15:10-14.  *See Koss Corp. v. Plantronics Inc.*, No. 21-cv-03854-JST, 2022 WL 19975244, at *8 (N.D. Cal. Nov. 16, 2022) (once "abstract idea of wireless communication is removed," claims only recite generic hardware and computer components, "which cannot save the claims from abstractness"); *PlanetID, LLC v. Digify, Inc.*, No. 19-cv-04615-JST, 2021 WL 567371, at *7 (N.D. Cal. Jan. 12, 2021) ("The asserted claims' recitation of generic

1    computer and network components does not provide the inventive concept required at step two.");

2    *Aftechmobile Inc. v. Salesforce.com, Inc.*, No. 19-cv-05903-JST, 2020 WL 6129139, at *7 (N.D.

3    Cal. Sept. 2, 2020) ("references to generic components do not take the asserted claims outside of

4    the realm of abstraction, because they merely provide a generic environment in which to carry out

5    the abstract idea").

6         Nor is there any assertion in the VMM patents or Complaint that determining CPU

7    utilization attributable to a particular VM improves the operation of VMs in any way. And nowhere

8    in the Complaint does Netflix even allege that any of the steps (whether alone or in combination)

9    provide an inventive concept. *See Rothschild Digital Confirmation, LLC v. Skedulo Holdings Inc.*,

10   No. 3:19-cv-02659-JD, 2020 WL 1307016, at *5 (N.D. Cal. Mar. 19, 2020) ("Once the abstract

11   idea is removed, there are no allegations in the complaint or patent as to [the asserted claims']

12   inventive concept or that the combination of claim limitations was not well-understood, routine, or

13   conventional"). While paragraphs 25, 30, and 35 of the Complaint allege that "the method claimed

14   can be used . . . for assistance in billing and/or for a whole variety of management tasks," these are

15   simply administrative tasks that humans could perform based on the claimed data, and not a

16   technological improvement to the operation of a computer. Nor do the conclusory allegations in

17   paragraphs 24-27, 29-32, and 34-37 of the Complaint include any specific assertions of technical

18   improvements. And in any event, these paragraphs focus on the specification, not the claims, and

19   thus fail for this reason as well. "[A]t step two, an inventive concept must be evident in the claims."

20   *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017)

21       Because there is no inventive concept at step two that rescues the claims, the '424, '707,

22   and '891 Patents are patent-ineligible and thus invalid.

23       **B.    The '893 Patent is Ineligible under Section 101**

24       The '893 Patent is directed to the abstract idea of managing the workload of physical

25   machines running VMs. The patent explains that in many known VM systems, a "load balancer"

26   is used to distribute requests to active virtual machines and may start up additional virtual machines

27   if the load is heavy. '893 Patent, 1:31-38. Claim 16 is the only claim addressed in the Complaint:

28

McKool Smith, P.C.
Los Angeles, CA

-13-

MOTION TO DISMISS

A method for use in a system having plural physical machines that contain active virtual machines, comprising:

receiving, at a load balancer, a request from a client;

in response to the request, determining whether at least one additional virtual machine should be started up;

in response to determining that at least one additional virtual machine should be started up, the load balancer sending at least one command to start up the at least one additional virtual machine in at least one of the physical machines;

determining, by the load balancer, whether a workload loading of the active virtual machines and the at least one additional virtual machine has fallen below a threshold;

in response to determining that the workload loading has fallen below the threshold, disabling a particular one of the active virtual machines and the at least one additional virtual machine;

a placement controller selecting placement of the active virtual machines and the at least one additional virtual machines on the physical machines to achieve a predefined policy;

computing, by the placement controller, indicators associated with corresponding plural different layouts of the active virtual machines and the at least one additional virtual machine on the physical machines, where the indicators provide information regarding performances of the corresponding layouts, and wherein each of the indicators is computed based on parameters associated with a corresponding one of the plural layouts;

comparing, by the placement controller, the indicators; and

selecting, by the placement controller, one of the plural layouts based on the comparing.

## 1.   *Alice* Step One: The '893 Patent is Directed to the Abstract Idea of Managing the Workload of Multiple Computing Resources

The representative claim of the '893 patent recites turning virtual machines on and off based on load and picking a "layout" of which virtual machines to run on which physical computers.  '893 Patent, claim 16.  This is little different from a bakery deciding how many ovens to turn on based on how many loaves of bread are needed, and figuring out the best arrangement of which baked goods should go into which ovens, or a shipping company determining how many boxes are needed

McKool Smith, P.C.
Los Angeles, CA

to transport a set of goods, and how to allocate and arrange the goods in the boxes, *i.e.*, human-performable abstract concepts.  Courts have held similar claims involving distributed computing to be abstract.  *See, e.g., Coho Licensing LLC v. Glam Media, Inc.*, 2017 WL 6210882, at *6 (N.D. Cal. Jan. 23, 2017), *aff'd*, 710 F. App'x 892 (Fed. Cir. 2018) (finding "divide and conquer in the area of distributive computing" an "abstract idea"); *Appistry, Inc. v. Amazon.com, Inc.*, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd* 676 F. App'x 1007 (Fed. Cir. 2017) ("The patents-in-suit recite the abstract idea of distributed processing akin to the military's command and control system, a longstanding and intuitive practice used by many large hierarchical organizations . . . .").

Here again, the abstract idea of managing a workload (such as virtual machines and the requests they handle) across a system of computing resources is the sort of technique that can be done mentally by a person or using pen and paper.  The Federal Circuit has held that "controlling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable."  *Ericsson*, 955 F.3d at 1327 (Fed. Cir. 2020) (citation omitted).  Just as claimed in the '893 patent, a human user could monitor requests to a system and increase or decrease the number of virtual machines used to process those requests.  And that user could also decide which physical computers to run those virtual machines on (the claimed "layout").

The claim does not recite any specific technical improvement.  The claim recites a "load balancer" and "placement controller," but again does not recite *how* those components work—it only describes *what* they are supposed to accomplish using functional, result-oriented language, which demonstrates abstractness as discussed above.  *See Affinity Labs,* 838 F.3d at 1269; *cxLoyalty*, 986 F.3d at 1378.

The Complaint's conclusory allegations based on the specification do not salvage the claims.  *See* Compl. ¶¶ 39-41.  Specifically, the complaint cites a "cost function" and "resource loading criteria, balancing criteria, cooling criteria, and power criteria."  Compl. ¶ 40.  But the use of a "cost function" and these abstract "criteria" are themselves abstract ideas.  And even if they were *not* abstract, they are not recited in the claim itself, but only in the specification, and therefore do not alter the Section 101 analysis.  *Am. Axle*, 967 F.3d at 1293.

McKool Smith, P.C.
Los Angeles, CA

McKool Smith, P.C.
Los Angeles, CA

2.      *Alice* Step Two: The '893 Patent Does Not Recite an Inventive Concept

Claim 16 contains no inventive concept, either in the individual limitations or as an ordered combination, as the claimed processes are all conventional.  The method rests on "determining" a workload to compare to a threshold and "computing" unspecified "indicators."  But the claim does not recite *how* to make such determinations or computations.  *See Two-Way Media*, 874 F.3d at 1339 (patent used "generic functional language to achieve [its] purported solution").  And the abstract idea of managing distributed processing is not an inventive concept. *Coho Licensing*, 2017 WL 6210882 at *6. ("[T]he Court can discern no inventive concept that transforms the abstract idea of divide and conquer in the area of distributive computing into a patent-eligible application of that abstract idea.").  Instead, "[t]aking the claim elements separately, the function performed by the computer at each step of the process is purely conventional."  *Alice*, 573 U.S. at 225.

Notably, Netflix does not even allege any specific inventive concept in its Complaint.  And here again, paragraph 40's discussion of a "cost function" and "account resource loading criteria, balancing criteria, cooling criteria, and power criteria," mentioned only in the specification, is irrelevant  because "an inventive concept must be evident in the claims." *Two-Way Media*, 874 F.3d at 1338.  And even if these criteria were recited in the claim they are all abstract concepts that cannot transform the claim into eligible subject matter.  The claim lacks any specific criteria or algorithm and simply applies generic computing technology to the broad concept of allocating a workload across a system.  There is no inventive concept at *Alice* step two to salvage the claim.

C.      The '122 Patent is Ineligible under Section 101

The only claim addressed in the Complaint, claim 10, reads as follows:

A method, comprising:

providing a first graphical user interface (GUI) from a host computer to a remote computer, the first GUI displaying on the remote computer a list of a plurality of virtual machines and to enable a user of the remote computer to select one of the virtual machines from the list as well as an action to be performed on the selected virtual machine, the selected action to be performed on the selected virtual machine independent of the other of the plurality of virtual machines;

receiving user input from the remote computer via the first GUI, the user input including a selection of a virtual machine and an action to be performed on the selected virtual machine;

in accordance with the user input, performing the action using the host computer on the selected virtual machine; and

generating a second GUI to enable the user of the remote computer to select a virtual machine from the plurality of virtual machines to which a hardware peripheral device accessible to the remote computer is to be mapped;

wherein said action is selected from the group consisting of starting, stopping, re-booting and shutting down.

The claimed method is straightforward and not technical.  One graphical user interface is provided to allow remote users to start, stop, reboot, or shut down a virtual machine on the host computer.  A second graphical user interface is provided to allow remote users to select a virtual machine and map their local hardware peripherals to that virtual machine.

### 1.    *Alice* Step One: The '122 Patent is Directed to the Abstract Idea of a GUI

Representative claim 10 of the '122 Patent is directed to the abstract idea of providing a graphical user interface or "GUI."  That the GUI is used to remotely manage virtual machines does not take the claim outside the realm of an abstract idea.  *Alice*, 573 U.S. at 223 ("limiting the use of an abstract idea to a particular technological environment" insufficient for eligibility).  The claim does not provide any technological solution, such as a specific virtual machine technology or network communication protocol, to a specific technological problem.  Rather, the claim is directed to arranging control functionality in two graphical user interfaces.  Where "the claims do not recite an improved structure or function" within a product, "but rather, are directed to arranging content in a particular order," that "is not a sufficient technological solution to a technological problem, but rather a results-oriented abstract idea."  *Broadband iTV, Inc. v. Amazon.Com, Inc.*, 113 F.4th 1359, 1368-69 (Fed. Cir. 2024) (citing *Elec. Power Grp., LLC*, 830 F.3d at 1355).

Claims directed to user interfaces are routinely found to be abstract.  *E.g. Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) ("method of providing an intelligent user interface" ineligible).  For example, a user interface that makes the user "faster and

1    more efficient, not the computer" is "not a technical solution to a technical problem."  *Trading*

2    *Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1090 (Fed. Cir. 2019) (user interface for trading patent

3    ineligible).  Here, there is no indication that the claimed user interfaces make the computer work

4    any better.  Rather, the '122 Patent claims are directed to the abstract idea of controlling

5    conventional technology, such as starting up and shutting down virtual machines and connecting

6    peripherals, through a GUI.  But the "practice of using graphics instead of programming" to control

7    a conventional environment "is no more than an abstract idea."  *Simio, LLC v. Flexsim Software*

8    *Prods.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020).

9        The Complaint alleges that the invention "allows a user of a remote computer to install

10    software from a CD onto the VM" and therefore improves technological systems.  Compl. ¶¶ 44-

11    45.  But nothing in the claim language is directed to the *technology* for transferring data to or from

12    a remote CD drive.  Rather, the claim language simply recites "a second GUI to enable the user of

13    the remote computer to select a virtual machine . . . to which a hardware peripheral device accessible

14    to the remote computer is to be mapped."  '122 Patent, claim 10.  The Complaint does not suggest

15    that the GUIs themselves provide any technical benefit.  The claim fails to provide any technical

16    details regarding either the GUIs or the mapping of peripherals.  In short, the Complaint fails to

17    allege any technological solution to a technological problem.  The '122 Patent is directed solely

18    toward the abstract idea of a GUI.

19        **2.    *Alice* Step Two: The '122 Patent Does Not Recite an Inventive Concept**

20        When a patent claim is directed to an abstract idea, "[t]he use and arrangement of

21    conventional and generic computer components . . . such as a database, user terminal, and server—

22    do not transform the claim, as a whole, into 'significantly more' than a claim to the abstract idea

23    itself."  *Credit Acceptance v. Westlake Servs.*, 859 F.3d 1044, 1056 (Fed. Cir. 2017).  The '122

24    patent fails *Alice* step 2 because the claims invoke "well-understood, routine [and] conventional"

25    technology to carry out the abstract idea.  *Alice*, 573 U.S. at 225 (citation omitted).  A patentee

26    "cannot[] contend that it is arguably inventive to enable a person to access information over a

27    network through a user interface."  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1347 (Fed.

28    Cir. 2018); *see also cxLoyalty*, 986 F.3d at 1371 (finding ineligible a claim where "a graphical user

McKool Smith, P.C.
Los Angeles, CA

-18-

interface ("GUI") provides the interface for the participant (i.e., a customer) to communicate with a web-based . . . system"). "Remotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017).

The patent admits that VMs, and management software to control them, were well known, conventional technologies. It acknowledges that "[e]xamples of VM managers include VM management software included with VM software such as VmWare®, Xen®, etc." '122 Patent, 3:46-48. Nothing in the specification—or the Complaint—suggests that the idea of turning such virtual machines on or off, or rebooting them, was unconventional. Using a remote GUI to *control* this conventional software in conventional ways does not provide any inventive concept. The second GUI for mapping a hardware peripheral similarly does not provide an inventive concept.

Representative claim 10 provides no technical detail about *how* the method maps a hardware peripheral device from a remote computer to a virtual machine, or how it stops, starts, or reboots a virtual machine. There is no indication whatsoever that unconventional or unique components or techniques are used to implement the abstract idea of a GUI for controlling VMs. The Federal Circuit in *BSG Tech. LLC v. Buyseasons, Inc,* confirmed that when searching for the requisite "inventive concept" at step 2, the focus must turn to "whether the claim limitations *other than the invention's use of the ineligible concept* to which it was directed were well-understood, routine, and conventional." 889 F.3d 1281, 1290 (Fed. Cir. 2018) (emphasis added). Here, there is little in the claim beyond the abstract user interface; all that remains are generic computer technologies that cannot provide patent eligibility. There is no "inventive concept" sufficient to "transform the nature of the claim[s] into patent-eligible subject matter." *Ultramercial Inc. v. Hulu, LLC,* 772 F.3d 709, 715-16 (Fed. Cir. 2014); *Alice*, 573 U.S. at 214-17.; *Alice*, 573 U.S. at 214-17.

### D.    The Complaint Fails to State a Claim for Induced Infringement

#### 1.    The Complaint Fails to Plausibly Allege Defendants' Knowledge of Infringement of Any of the Asserted Patents

None of Netflix's induced infringement allegations in the Complaint (¶¶ 79-97, 137-152, 184-197, 229-242, 264-276) allege knowledge of infringement, which is fatal to such claims. "For

McKool Smith, P.C.
Los Angeles, CA

1   an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts

2   plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the

3   patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus.*, 869 F.3d

4   at 1379 (Fed. Cir. 2017) (citation omitted).

5        The Complaint does not allege that Defendants were ever provided notice of infringement

6   by Netflix, the seller from whom Netflix bought the patents-in-suit, or anyone else.  Nor does the

7   Complaint allege that Defendants performed any type of infringement analysis of the patents on

8   their own.  Rather, the Complaint seems to imply that because Defendants allegedly knew of the

9   patents, and because the technology area is related to VMware's products, Defendants must have

10  known of infringement.  That is not s plausible allegation.  As Judge Lin recently held, "[to] assert

11  induced infringement based on pre-filing conduct, [a patent owner] must allege facts from which

12  the Court can plausibly infer that [the accused infringer] had pre-filing knowledge of the asserted

13  patents and the alleged infringement."  *Yangtze Memory Techs. Co., Ltd. v. Micron Tech., Inc.*, No.

14  23-cv-05792-RFL, 2024 WL 3422598, at *2 (N.D. Cal. July 16, 2024) (granting motion to dismiss).

15       Because no facts are alleged that plausibly support either knowledge of infringement or

16  specific intent to cause infringement by VMware's customers, the Complaint's induced

17  infringement allegations should be dismissed.  *Dali Wireless*, 638 F. Supp. 3d at 1097.

### 2. The Complaint Does Not Even Sufficiently Allege Knowledge of the Asserted Patents Themselves

20       The implausibility of the Complaint's inducement claims is further evidenced by the

21  deficient allegations concerning knowledge of the asserted patents by the Defendants, which are

22  premised solely on alleged citations to the patents-in-suit (or related patents or publications) in the

23  course of *VMware's* (or, in some cases, other companies') prosecution of its *own* patents.  The

24  Complaint includes a variety of timelines with citations in prosecution histories that would have

25  purportedly informed Defendants of the existence of the patents-in-suit.  Compl. ¶¶ 82, 140, 185,

26  231, 265.  None of that prosecution, however, discussed the *claims* of the patents-in-suit, which are

27  the basis of any assessment of infringement.  And again, the Complaint fails to allege any facts

28  indicating that Broadcom or VMware knew it infringed any such claims.

McKOOL SMITH, P.C.
LOS ANGELES, CA

-20-

1    Just because an accused infringer was aware of an asserted patent through citation during

2    prosecution of a different patent does not mean the accused infringer knew that its *products*

3    infringed the asserted patent.  Rather, courts find that "even substantive references to patents in the

4    alleged infringer's patent prosecutions, without more, fail to sufficiently allege knowledge of

5    *infringement*."  *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL

6    4685306, at *5 (N.D. Cal. Oct. 7, 2021) (emphasis in original).

7    And because many of the citations are to family members of an asserted patent, rather than

8    the asserted patent itself, the connection is even weaker.  "Allegations of general knowledge of a

9    patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular

10    patent." *Yangtze Memory*, 2024 WL 3422598 at *2; *see also Sonos*, 591 F. Supp. 3d at 643.  Further,

11    citations to a patent application *publication*, rather than the issued patent itself, do not provide

12    knowledge of the asserted patent and its issued claims.  Courts thus hold that "mere alleged

13    awareness of the . . . patent application does not imply the requisite knowledge of the existence of

14    the later-issued patent."  *Vasudevan Software, Inc. v. Tibco Software, Inc.*, No. C 11-06638 RS,

15    2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012).

16    For example, the Complaint identifies only a single citation of the '424 Patent itself in a

17    VMware application.  Compl. ¶ 79.  But this citation was on the second page of a list of *24* different

18    references.  Ex. A.  The Complaint does not provide any factual allegations supporting an inference

19    that VMware would have known the substance of that patent or its claims.  And while the "821

20    Publication" was cited in other VMware prosecution histories, that publication had different claims

21    than the issued '424 Patent, and no indication that the '424 Patent ever issued as a patent.  It thus

22    does not follow from the facts alleged in the Complaint that Defendants knew of the '424 Patent.

23    Similarly, for the '891 Patent, the Complaint mentions only citation of the related *application*

24    *publication* (with different claims and with no indication that the patent would ever issue) and of

25    the '424 patent, which has different claims from the '891 Patent.  Compl. ¶ 185.  There is no

26    indication that the issued '891 Patent was ever cited.

27    For the '707 Patent, the Complaint mentions the single citation of the '424 Patent—a

28    different patent with different claims—as well as numerous rejections of a *Symantec* patent

application. Compl. ¶ 140.   Symantec was an antivirus company, one division of which was acquired by Broadcom in 2019, years after the 2014-2015 rejections.  Compl. ¶¶ 138-140.  The Complaint never even alleges that the patent, No. 9,143,410, was ever owned by Broadcom.  *Cf.* Ex. B (assignment record showing no ownership of the '410 patent by Broadcom).[4]  This tenuous link does not give rise to a plausible allegation of knowledge of the '707 Patent.

For the '122 Patent, the Complaint cites only evidence regarding the "'580 Publication"— another *patent application publication* that, while related to the '122 Patent, did not indicate that a patent had ever issued and had a completely different set of claims.  Compl. ¶¶ 264-266. Similarly, for the '893 Patent, nearly all of the citations are to the "'608 Publication."  Compl. ¶ 231.[5]

The Complaint's allegations thus fail to plausibly allege knowledge of *any* of the five patents, much less knowledge of infringement.

**E.      The Complaint Fails to State a Claim for Contributory Infringement**

Netflix's Complaint includes contributory infringement allegations only for the '424, '707, and '891 patents.  And for each, the allegations are facially deficient as they do nothing more than parrot the statutory requirements under 35 U.S.C. § 271(c) in four conclusory, formulaic paragraphs per patent.  Compl. ¶¶ 98-101, 153-156, 198-201.  Netflix's contributory infringement allegations thus fail for the same reasons as its inducement claims, because "[l]ike induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."  *Commil USA, LLC v. Cisco Sys.*, 575 U.S. at 639 (citation omitted).

For the '424 and '707 patents, the Complaint merely cites the direct and induced infringement sections in support of the knowledge requirement, rather than citing any additional facts.  Compl. ¶¶ 101, 156.  But direct infringement allegations are insufficient to support an inference of the knowledge element for contributory infringement.  *See, e.g., Kawasaki,* 677 F.

---

[4] Patents and file histories may be considered even if not explicitly attached to the complaint.  In resolving motions to dismiss, "courts have taken judicial notice of prior art references, patents, and file histories."  *Radware, Ltd. v. A10 Networks, Inc.*, No. C-13-02021-RMW, 2014 WL 61047, at *3 (N.D. Cal. Jan. 7, 2014).

[5] The Complaint alleges that "VMware also cited the '893 Patent . . . as part of prosecution of U.S. Patent No. 11,183,713," *id.*, but this appears to be an error as the patent is unrelated to VMware. And regardless, awareness of the patent is a far cry from knowledge of infringement.

McKool Smith, P.C.
Los Angeles, CA

-22-

McKool Smith, P.C.
Los Angeles, CA

1    Supp. 3d at 1088 (dismissing claims for contributory infringement).  And as explained in the

2    induced infringement section above, those sections discuss at best knowledge of the *patents* rather

3    than knowledge of *infringement*.  For the '891 patent, the Complaint merely cites "(*see, e.g.*, ¶¶ *)*"

4    to support the allegation that Defendants knew of infringement. Compl. ¶¶ 201.  Even assuming

5    Netflix intended to cite to its direct and inducement paragraphs for this patent, its allegations fail

6    for the same reasons.

7           Because the Complaint fails to plead specific facts showing both knowledge of the patents

8    *and* knowledge of infringement, the Complaint's conclusory allegations of contributory

9    infringement should also be dismissed.

10          **F.      The Complaint Fails to State a Claim for Willful Infringement**

11          For willful infringement, both "knowledge of the patent and knowledge of infringement

12   must be pled with plausibility." *P2I*, 2024 WL 4294652 at *9 (citing *Dali Wireless*, 638 F. Supp.

13   3d at 1095).  As discussed in the induced and contributory infringement sections above, the

14   Complaint fails entirely to plead knowledge of infringement, and its allegations of knowledge of

15   the patents-in-suit are deficient.

16          For the '424 Patent, the Complaint alleges under the "Willful Infringement" section that

17   "[g]iven the close relationship between the subject of the Patents-in-Suit and the '424 Accused

18   Products, including that VMware marked accused functionality with patents that were objected to

19   during prosecution based on the Asserted Patents, Broadcom knew or should have known of the

20   substantial risk of infringement through use of their products."  Compl. ¶ 107.  But again, "even

21   substantive references to patents in the alleged infringer's patent prosecutions, without more, fail

22   to sufficiently allege knowledge of *infringement*."  *MasterObjects*, 2021 WL 4685306 at *5

23   (emphasis in original).  The Complaint adds no additional allegations to support willfulness for any

24   of the other four patents, but rather relies solely on its direct and indirect infringement allegations

25   regarding purported knowledge of infringement.  Compl. ¶¶ 105, 159, 204, 245, 279 (alleging in

26   conclusory fashion that "as discussed above," Defendants had knowledge of infringement).  As

27   explained above, those sections fail to plausibly plead knowledge of infringement, and thus all od

28   Netflix's willful infringement claims should also be dismissed.

-23-

1

2

**G.     The Indirect and Willful Infringement Claims Against Broadcom Should be Dismissed Because Any Knowledge of the Asserted Patents by VMware Can Not Imputed to Broadcom**

3       Dismissal of the indirect and willful infringement claims against Broadcom is further

4   warranted because the Complaint relies on the specious allegation that VMware's purported

5   knowledge of the asserted patents based on patent prosecution may be imputed to Broadcom simply

6   because Broadcom later became VMware's ultimate parent company.[6]  Compl. ¶¶ 84-85, 138, 141,

7   186, 232, 266.  But the mere fact that Broadcom is a parent company does not mean it knew of

8   infringement.  In *BSD Crown, Ltd. v. Amazon.Com, Inc.*, for example, the court found it was not

9   plausible that knowledge of a patent by one Amazon subsidiary would be imputed to another, even

10  where an attorney for Amazon prosecuted the relevant patents for Amazon subsidiary Twitch.  684

11  F. Supp. 3d 993, 1001 (N.D. Cal. 2023).

12      Although the Complaint alleges that one in-house counsel for VMware from 2013-2023

13  moved to Broadcom (Compl. ¶ 85), it fails to plausibly allege that the particular in-house counsel

14  knew about the specific patents-in-suit or infringement by VMware.  The citation of the '424 patent,

15  for example, took place in 2012, before the alleged in-house counsel ever started at VMware.  The

16  Complaint provides no basis to infer that the attorney would have remembered or used that

17  information in working for Broadcom many years later, particularly considering in-house counsel

18  manage large patent portfolios, each patent in the portfolio may cite to dozens or hundreds of

19  references, and each of those references may have many family members.  In this context, it is

20  simply not plausible that the attorney would have sufficient knowledge and that this knowledge

21  would be imputed to Broadcom.  *See BSD Crown*, 684 F. Supp. 3d at 1001.  Thus, any indirect or

22  willful infringement alleged in the Complaint is not attributable to Broadcom, Inc., and these

23  allegations should be dismissed as to Broadcom, Inc. for this additional reason.

24

25

26

27

28

---

[6] The Complaint also fails to plausibly allege that Broadcom plays any role in connection with the allegedly infringing acts, all of which involve VMware products.  .

McKool Smith, P.C.
Los Angeles, CA

**H.    Netflix Cannot Rely On Its Complaint To Support Post-Complaint Indirect and Willful Infringement Claims**

Finally, Netflix cannot rely on its Complaint to support post-Complaint claims for indirect or willful infringement, because it is insufficient to provide post-suit notice of infringement. *VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 996 (N.D. Cal. 2023) (granting summary judgment of no indirect infringement because "a complaint and infringement contentions" do not "alone satisfy post-suit notice"). "[W]ithout a notice letter" or similar circumstances, "the complaint will generally not be adequate to serve as notice for either willful or indirect infringement." *Sonos*, 591 F. Supp. 3d at 648 (dismissing willful and indirect infringement claims with prejudice). Other courts have similarly found that the filing of a lawsuit does not provide the necessary notice to an accused infringer. *Splunk Inc. v. Cribl, Inc.*, 662 F.Supp.3d 1029, 1035-41 (N.D. Cal. 2023) (granting motion to dismiss as to willful and indirect infringement due to lack of notice); *ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) ("[T]he complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages."); *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (dismissing willfulness-based enhanced damages claim where the plaintiff had alleged that the defendant gained "knowledge of the [patent] at least since the filing of this complaint").

## IV.    CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Date: March 3, 2025                                Respectfully submitted,

                                                   */s/ Steven Rizzi*
                                                   _____

                                                   Steven Rizzi (pro hac vice)
                                                   McKool Smith, P.C.
                                                   1301 Avenue of the Americas
                                                   32nd Floor
                                                   New York, NY 10019
                                                   Phone: 212-403-9400
                                                   Fax: 212-403-9444
                                                   Email: srizzi@mckoolsmith.com

Ramy Hanna (pro hac vice)
McKool Smith, P.C.
600 Travis Street
Suite 7000
Houston, TX 10001-8603
Phone: 713-485-7312
Fax: 713-485-7344
Email: rhanna@mckoolsmith.com

Alan P. Block (SBN 143783)
McKool Smith, P.C.
300 South Grand Avenue
Ste 2900
Los Angeles, CA 90071
Phone: 213-694-1054
Fax: 213-694-1234
Email: ablock@mckoolsmith.com

Christopher McNett (SBN 298893)
McKool Smith, P.C.
1717 K St NW, Suite 1000
Washington, DC 20006
Phone: (202) 370-8300
Fax: (202) 370-8344
Email: cmcnett@mckoolsmith.com
Attorneys for Broadcom, Inc. and VMware, LLC

McKool Smith, P.C.
Los Angeles, CA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being served upon counsel of record for Plaintiff on March 3, 2025, via CM/ECF.

> _/s/ Steven Rizzi_
> Steven Rizzi

McKool Smith, P.C.
Los Angeles, CA

MOTION TO DISMISS