UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NETFLIX, INC.,

             Plaintiff,

    v.

BROADCOM INC., et al.,

             Defendants.

Case No.  24-cv-09324-PCP

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 49

Plaintiff Netflix, Inc. alleges that defendants Broadcom Inc. and VMWare LLC infringe five of its software patents. Defendants move to dismiss Netflix's first amended complaint, contending in part that the asserted claims of each of the asserted patents are not patent-eligible under 35 U.S.C. § 101. For the reasons that follow, the Court grants defendants' motion to dismiss with leave to amend in part.

## BACKGROUND

Netflix brought this suit against Broadcom and its subsidiary VMWare on December 23, 2024 alleging infringement of five software patents: U.S. Patent Nos. 7,779,424 (the '424 patent); 7,797,707 (the '707 patent); 8,799,891 (the '891 patent); 8,185,893 (the '893 patent); and 8,863,122 (the '122 patent).

### I.    The '424, '707, and '891 Patents (the "Cherkasova Patents")

The '424, '707, and '891 Patents (the "Cherkasova patents") were each filed on March 2, 2005 by inventors Ludmila Cherkasova and Robert D. Gardner. The '424 patent is titled "System and Method for Attributing to a Corresponding Virtual Machine CPU Usage of an Isolated Driver Domain in Which a Shared Resource's Device Driver Resides." The '707 Patent is titled "System and Method for Attributing to a Corresponding Virtual Machine CPU Usage of a Domain in

United States District Court
Northern District of California

1    Which a Shared Resource's Device Driver Resides." The '891 patent is titled "System and Method

2    for Attributing CPU Usage of a Virtual Machine Monitor to a Corresponding Machine."

3          All three patents teach systems and methods for attributing the CPU usage of virtual

4    machines (VM) associated with either a virtual machine monitor, a domain, or driver domain. The

5    three patents cite one another as related applications and contain substantially similar figures and

6    specification descriptions.

7          As explained in the first amended complaint and supported by the patent specification,

8    because some CPU utilization (such as that of shared device drivers) is caused by an individual

9    virtual machine but occurs in the virtual machine monitor or a separate driver domain, simply

10    measuring the CPU allocation of the virtual machines themselves "often fails to reveal the 'true'

11    usage of the CPU that is attributable to different VMs." *See, e.g.*, '424 patent 3:54-60. Each patent

12    includes an identical recitation of the "desire" it seeks to accomplish: "a system and method for

13    accurately determining CPU utilization that is attributable to VMs on a system." *See, e.g.*, *id.* at

14    3:1-3.

15          The operative complaint alleges infringement under "at least" claims 1–19 of the '424

16    patent, claims 1–28 of the '707 patent, and claims 1–24 of the '891 patent.

## II.    The '893 Patent

18          The '893 patent was filed on October 27, 2006. It is titled "starting up at least one virtual

19    machine in a physical machine by a load balancer." It teaches a system and method for a virtual

20    machine load balancing technique that monitors active virtual machine workloads across multiple

21    physical machines.

22          As explained in the first amended complaint and supported by the patent specification,

23    before the '893 patent, then-existing load balancing techniques would account for the worst-case

24    loading scenario by planning in advance for a sufficient number of servers to be provided. *See*

25    '893 Patent, 1:15-21. These techniques left servers idle during periods of low demand, resulting in

26    significant overall power consumption in large networks. *Id.* at 1:23-27, 6:14-19. The patented

27    technique describes using a load balancer to distribute requests to active virtual machines and

28    starting up additional virtual machines as the loading of the active virtual machines becomes

heavy. It considers both the distribution of the load and conditions in the underlying physical machines or servers.

The operative complaint alleges infringement under "at least" claims 1–11 and 16 of the '893 patent.

### III.    The '122 Patent

The '122 patent was filed on July 31, 2009. It is titled "remote control of a plurality of virtual machines using actions facilitated through a graphic user interface." It teaches a system and method in which a single, universal interface enables a network administrator to remotely control multiple virtual machines. The interface enables users to power on, power off, restart, and perform various other actions on each virtual machine.

As explained in the first amended complaint and supported by the patent specification, then-existing remote management systems enabled control of only physical server hardware but not of any VMs associated with the server hardware. '122 Patent at 4:4-7. Complex VM environments often also included a single computer hosting multiple VMs that were designed by different entities and often had different interfaces. *Id.* at 1:16-20, 2:53-63. As a solution to this problem, the '122 Patent discloses "a single, universal interface" used to "control multiple VMs on multiple servers."

The operative complaint alleges infringement under "at least" claims 10–12 of the '122 patent.

## LEGAL STANDARDS

### I.    Rule 12(b)(6)

When considering a motion to dismiss an action for failure to state a claim under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must allege facts that allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the framework of a complaint," but the Court will not assume they are correct unless adequately "supported by factual

allegations." *Id.* at 679.

Patent eligibility "may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). "If there are claim construction disputes at the Rule 12(b)(6) stage," the Court "must proceed by adopting the non-moving party's constructions," or the Court "must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (cleaned up). Neither party contends that any claim construction is required to resolve this motion.

## II.     Patent Validity Challenges Under 35 U.S.C. § 101

35 U.S.C. § 101 makes patentable "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." This broad provision has an important exception: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).

In *Alice*, the Supreme Court established a two-step framework for assessing the validity of patent claims under § 101. *See id.* At step one, a court must "determine whether the claims at issue are directed to a patent-ineligible concept," including abstract ideas, natural phenomena, or laws of nature. *Id.* at 218. "[S]tep one of the *Alice* framework does not require an evaluation of the prior art or facts outside of the intrinsic record regarding the state of the art at the time of the invention." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1374 (Fed. Cir. 2020). While the patent "specification [is] helpful in illuminating what a claim is 'directed to'" at step one, "reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). "If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and [the court] need not proceed to the second step.'" *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018) (quoting *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018)). "[C]ourts commonly find 'functional' claims—i.e., those that recite a result

without providing details for *how* that result is to be achieved—to be directed to abstract ideas. Further, the fact that a claimed step can be performed by the human mind or a person with a pencil and paper has often been found to be an indication that the claims are directed to patent ineligible abstract ideas." *Skillz Platform Inc. v. Aviagames Inc.*, No. 21-CV-02436-BLF, 2022 WL 783338, at *6 (N.D. Cal. Mar. 14, 2022) (collecting cases).

At *Alice* step two, the court "search[es] for an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217–18 (cleaned up). "Deciding whether claims recite an 'inventive concept,' or something more than 'well-understood, routine, conventional activities previously known to the industry,' may turn on underlying 'question[s] of fact.'" *Skillz Platform Inc.*, 2022 WL 783338, at *6 (quoting *Aatrix*, 882 F.3d at 1128, and *Alice*, 573 U.S. at 217–18). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *Id.* (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018), and citing *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014)).

"In cases involving software innovations, the *Alice* step two and frequently the *Alice* step one inquiry 'often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool.'" *Id.* at *7 (quoting *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303, 1306–07 (Fed. Cir. 2020)). "'[S]oftware can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself.'" *Id.* (quoting *Uniloc*, 957 F.3d at 1309, and citing *Customedia Techs., LLC v. Dish Net. Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)). "The Federal Circuit has found software-related claims eligible where (1) 'the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers,' and (2) 'the claim is properly characterized as identifying a

specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function.'" *Id.* (quoting *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020)) (cleaned up). "The improvement need not be defined by reference to 'physical components.'" *Id.* (citing *Uniloc*, 957 F.3d at 1309, and *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016) ("To hold otherwise risks resurrecting a bright-line machine-or-transformation test ... or creating a categorical ban on software patents.")). But "the Federal Circuit has stated that software patents are invalid where they 'merely recite generalized steps to be performed on a computer using conventional computer activity.'" *Id.* (quoting *Uniloc*, 957 F.3d at 1308, and citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (noting that claims would be invalid if they "merely recite[d] the abstract idea … along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components")).

"In determining whether claims are directed to a patent-eligible improved computer system rather than an abstract idea, courts have found that technical advantages described in the specification can be a significant indication of eligibility." *Id.* at *7 (citing *CardioNet*, 955 F.3d at 1369–70 (noting that advantages disclosed in the patent specification are "important in our determination that the claims are drawn to a technological improvement"), and *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259–60 (Fed. Cir. 2017)). But technological details set forth only in the specification, and not in the patents' claims, cannot supply an inventive concept. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept."). "Courts also consider the prosecution history to be relevant to assessing whether the claims are directed to an improvement in computer technology." *Skillz Platform Inc.*, 2022 WL 783338, at *7 (citing *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348–49 (Fed. Cir. 2018)). "And courts also must consider factual allegations in the [c]omplaint." *Id.* (citing *Aatrix*, 882 F.3d at 1125).

**ANALYSIS**

**I.    Claim 1 of each of the Cherkasova patents is invalid under 35 U.S.C. § 101.**

    **A.    Netflix's amended complaint contains plausible allegations that defendants infringe only claim 1 of each of the Cherkasova patents.**

As an initial matter, the parties disagree about whether claim 1 of each Cherkasova patent can be considered representative for the purposes of the Court's patent eligibility inquiry. Because the operative complaint fails to plead facts to plausibly allege infringement of any claims of the Cherkasova patents beyond each patent's first claim, the Court need not resolve the dispute about representativeness at this time.

Although "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In patent cases, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the [patent] claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021).[1] "A plaintiff is not required to plead infringement on an *element-by-element* basis." *Id.* at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)) (emphasis added). But "[t]here must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent *claim*." *Id.* at 1353 (emphasis added).[2]

---

[1] The Federal Circuit applies its "own law to the specific question of whether a complaint states a claim of patent infringement on which relief may be granted." *Heidary v. Amazon.com, Inc.*, No. 2024-1580, 2024 WL 4489918, at *3 (Fed. Cir. Oct. 15, 2024) (quoting *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024)).

[2] Netflix cites *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323 (Fed. Cir. 2012), for the proposition that "a plaintiff need not even identify which claims it asserts are being infringed." *Id.* at 1335. But that "portion of the decision in *Bill of Lading* dealt with Federal Rule of Civil Procedure 84 and its attendant Form 18, both of which have been eliminated from the Federal Rules." *Bot M8 LLC*, 4 F.4th at 1346. In a post-Form 18 landscape, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *AlexSam, Inc.*, 119 F.4th at 42. *See also Askan v. FARO Techs., Inc.*, No. 2024-2258, 2025 WL 1363303, at *2 (Fed. Cir. May 12, 2025) ("A complaint claiming patent infringement must contain 'factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim,' and

7

Here, Netflix's operative complaint contains factual allegations detailing how defendants' accused products infringe claim 1 of each Cherkasova patent. With respect to the other claims of the Cherkasova patents, Netflix provides details about the claim language of claims 2–19 of the '424 patent, claims 2–28 of the '707 patent, and claims 2–24 of the '891 patent in the background section describing each patent, but includes no factual allegations explaining how defendants' accused products infringe those claims or any others. The lack of additional claim-by-claim infringement factual allegations is particularly puzzling because the complaint emphasizes the purportedly "unique limitations [found in these other claims] not found in the others." FAC ¶¶ 29, 68, 43 (discussing the independent claims); *see also, e.g.*, FAC ¶¶ 29, 33, 43, 46, 69 (alleging that the additional dependent claims "recite *additional* and *specific* methods" (emphasis added)). Indeed, in its opposition brief, Netflix argues that its complaint "identifies additional limitations in the independent and dependent claims not found in [claim 1 of each Cherkasova patent] and … meaningful arguments for meaningful differences [among the claims]." Dkt. No. 50, at 15. Yet the complaint includes specific factual allegations regarding infringement *only* for claim 1 of each patent, while alleging infringement of the other claims in an entirely conclusory fashion. Accepting Netflix's allegation that the other claims of the '424 patent, the '707 patent, and the '891 patent contain unique limitations, Netflix's failure to provide any factual allegations explaining how defendants' accused products infringe those unique claim limitations amounts to a "mere recitation of claim elements and corresponding conclusions, without supporting factual allegations." *Bot M8*, 4 F.4th at 1355. Because such a pleading does not state a claim under the *Iqbal/Twombly* standard, Netflix's operative complaint does not plausibly allege infringement of the other claims of the Cherkasova patents identified in the operative complaint.

---

must do more than 'recit[e] the claim elements and merely conclud[e] that the accused product has those elements.'" (quoting *Bot M8 LLC*, 4 F.4th at 1353)). Where, as here, Netflix itself represents that the additional claims contain materially different elements than claim 1 of each patent, Netflix's lack of factual allegations regarding the infringement of those distinct claims is fatal. In the absence of any attempt to allege facts regarding those materially different elements, the operative complaint does not put defendants fairly "on notice of what activity ... is being accused of infringement" with respect to the allegedly unique claims. *AlexSam, Inc.*, 119 F.4th at 42.

**B.      Claim 1 of each of the Cherkasova patents is directed to a patent-ineligible subject matter.**

Unlike its conclusory allegations regarding other claims, Netflix's operative complaint does include detailed factual allegations regarding defendants' infringement of claim 1 of each of the Cherkasova patents which teach:

| '424 Patent | '707 Patent | '891 Patent |
|---|---|---|
| 1. A method comprising:<br><br>observing communication from plurality of paravirtualized virtual machines (VMs) to driver domains that are isolated from the plurality of VMs, the communication comprising at least one resource request from the plurality of VMs to the driver domains, comprising observing communication from said plurality of VMs requesting access to a shared resource that is accessible by the plurality of VMs, wherein a device driver for said shared resource is arranged in said driver domains; and<br><br>determining, based on said communication between the plurality of VMs and the plurality of driver domains, CPU utilization of said plurality of driver domains attributable to the plurality of VMs, including determining a share of CPU execution attributed to each of the VMs during a predetermined time interval. | 1. A method comprising:<br><br>observing, in a computer, communication from a virtual machine (VM) to a domain in which a device driver for a shared resource resides, wherein the domain is separate from a virtual machine monitor (VMM);<br><br>determining, in the computer and based on said communication, CPU utilization of said domain attributable to said VM;<br><br>determining, for the VM, CPU utilization allocated by a scheduler to the VM; and<br><br>determining, for the VM, total CPU utilization attributable to the VM by summing the determined CPU utilization allocated to the VM by the scheduler and the determined CPU utilization of the domain attributable to the VM. | 1. A method comprising:<br><br>observing communication from a given virtual machine (VM) of a plurality of VMs, to a virtual machine monitor (VMM), by observing communication from said VM that is requesting access to a resource, as an access request for said VM by said VMM; and<br><br>determining, based on said communication, utilization of the CPU by said VMM specifically attributable to said VM, and not attributable to any other of the plurality of VMs, wherein the utilization of the CPU by said VMM is the utilization of the CPU by said VMM performed for processing said access request for said VM by said VMM. |

Despite the more detailed allegations of infringement, defendants contend that the operative complaint nonetheless fails to state a claim for relief because each of these claims is directed to a patent-ineligible subject matter—namely, the abstract idea of "collecting and analyzing information."[3] Defendants argue that the method contained in claim 1 of each patent includes only two steps, both of which are abstract: The method first "observ[es]" communications from each virtual machine requesting resources, and then uses those communications to "determine[ ]" how much CPU usage is attributable to each virtual machine. Netflix argues that defendants oversimplify the claims, arguing that the claims are directed to "specific and improved methods for attributing CPU utilization based on VM communications."

"If the focus of the claim is a specific and concrete technological advance, for example an improvement to a technological process or in the underlying operation of a machine," the claim succeeds at *Alice* step one as patent eligible. *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022). Netflix points to the patent specification and argues that it reveals that the problem the inventors faced in monitoring the CPU utilization attributable to each of the VMs on the system: pre-existing systems "only considered the amount of CPU allocated by the scheduler for execution of a particular VM," which "often fails to reveal the 'true' usage of the CPU by different VMs." FAC ¶ 23; '424 Patent at 3:54-58, 3:61-4:5. Netflix says this means that then-existing systems had inaccuracies that affected the operation of the VM architecture. Netflix alleges that the claims solve for this by using a specific type of communication not previously

_____

[3] Defendants analyze claim 1 of each of the patents together, which they argue is appropriate because the Cherkasova patents were all filed on the same day in 2005, name the same two inventors, and include substantially the same specification and diagrams. (Defendants also address the claim language of each patent, which demonstrates the de minimis differences between them.) Plaintiffs note in a footnote that they disagree with defendants' characterization "that the claims among [the Cherkasova patents] are nearly identical," but also analyze the three patents together and cite only "to the specification of the '424 Patent, not[ing] the '707 and '891 [p]atents have the same relevant disclosure." Dkt. No. 50, at 7 n.2. Further, the operative complaint itself describes each patent in a nearly identical manner. FAC ¶¶ 23–25, 37–48, 50–60. The Court therefore follows the parties lead and analyzes these three patents together. The primary difference between the three claims is simply the type of information analyzed: resource requests from VMs to domain drivers for the '424 Patent; resource requests from a VM to a domain in which a device driver for a shared resource resides for the '707 patent; and resource requests from a given VM of a plurality of VMs to a virtual machine monitor (VMM) for the '891 patent. This variance in no way affects the Court's analysis for the reasons discussed herein.

United States District Court
Northern District of California

used in attributing CPU usage to VMs—for the '424 Patent, for example, communications from a plurality of VMs to driver domains that are isolated from the plurality of VMs and comprising at least one resource request from the plurality of VMs to the driver domains—as a way of "determining a share of CPU execution attributed to each of the VMs" and improving CPU usage accuracy, which is fundamental to "improving the overall performance of the underlying infrastructure." '424 Patent at 8:43-9:2, 16:58-63. Netflix argues that each patent's process captures an input never before used in attributing CPU usage to VMs (resource requests from VMs to domain drivers for the '424 Patent; resource requests from a VM to a domain in which a device driver for a shared resource resides for the '707 patent; and resource requests from a given VM of a plurality of VMs to a virtual machine monitor (VMM) for the '891 patent) constituting a non-abstract computing functionality improvement.

Netflix asserts these claims constitute an "improvement to VM technology" and their underlying infrastructure. But the specification makes clear that any alleged improvement to the overall performance of the underlying infrastructure is due to that fact the information about CPU utilization generated through the method can then be used to permit "migration" of VMs from one physical node to another when the current physical node capacity is insufficient. *Id.* at 8:43-9:2. This improvement is not recited in the claims themselves—claim 1 makes no mention of migrating VMs. Rather, the claims merely focus on improving the accuracy of resource usage monitoring. Even by Netflix's own definition, the claims are directed to "specific and improved methods for attributing CPU utilization based on VM communications"—not any subsequent steps using said attribution to improve the VMs, the VMMs, or their infrastructure. Dkt. No. 50, at 2; *see, e.g.*, '424 Patent, 3:1-3 (stating that each patents' accomplishment is "a system and method for accurately determining CPU utilization that is attributable to VMs on a system").

Such an invention is directed not "to an improvement to computer functionality," *Enfish*, 822 F.3d at 1335, but to improving the accuracy of certain information relating to the computer's operation. As the Federal Circuit has explained, such inventions do not involve a patent-eligible subject matter:

Information [ ] is an intangible. *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 451 n.12 (2007); *Bayer AG v. Housey Pharm., Inc.*, 340 F.3d 1367, 1372 (Fed. Cir. 2003). Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas. *See*, *e.g.*, *Internet Patents*, 790 F.3d at 1349; *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011). In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. *See*, *e.g.*, *TLI Commc'ns*, 823 F.3d at 613; *Digitech*, 758 F.3d at 1351; *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed.Appx. 950, 955 (Fed. Cir. 2014); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010); *see also Mayo* [*Collaborative Servs. v. Prometheus Lab'ys*, 566 U.S. 66, 84–85 (2012)]; *Parker v. Flook*, 437 U.S. 584, 589–90 (1978); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972). And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis. *See*, *e.g.*, *Content Extraction*, 776 F.3d at 1347; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

*Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016).

Netflix cites several cases that it argues establish the eligibility of its claims, but each is distinguishable. *See SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1301, 1303–04 (Fed. Cir. 2019) (finding a computer security software patent eligible where the claims prevented the normal, expected operation of a conventional computer network, overrode the routine and conventional sequence of events by detecting suspicious network activity, generated reports of suspicious activity, and received and integrated the reports using one or more hierarchical monitors); *Cirba Inc. v. VMware, Inc.*, No. CV 19-742-GBW, 2023 WL 2989049, at *2 (D. Del. Apr. 18, 2023) (finding a non-abstract technological improvement where the software patent optimized the placement of virtual machines on particular servers); *Broadcom Corp. v. Netflix*

*Inc.*, 677 F. Supp. 3d 1010, 1025 (N.D. Cal. 2023) (finding claims eligible where they were directed to efficiently managing and deploying virtual machines within a complex distributed computing environment). This case instead most closely resembles *Electric Power Group*, in which the Federal Circuit found a patent that claimed "a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions" was directed to an abstract idea and therefore ineligible. *Elec. Power Grp.*, 830 F.3d at 1354.

Netflix attempts to distinguish *Electric Powe*r by arguing that the claims here recite a method that utilizes data never before used to determine CPU usage. That argument fails because "collecting information, including when limited to particular content (which does not change its character as information), [is] within the realm of abstract ideas." *Id.* at 1353. The claimed method simply incorporates certain existing data into existing CPU usage monitoring.[4] Like in *Electric Power*, the claims "do not even require a new source or type of information, or new techniques for analyzing it." *Id.* at 1355. "Even accepting the argument that the claimed process results in improved data," that does not salvage it from being directed to an ineligible abstract idea. *In re Bd. of Trs. of Leland Stanford Junior Univ.*, 989 F.3d 1367, 1373 (Fed. Cir. 2021) (citing *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a new abstract idea is still an abstract idea."); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("[P]atent law does not protect such claims, without more, no matter how groundbreaking the advance.").

Accordingly, claim 1 of the Cherkasova patents is directed to an ineligibly abstract subject matter at *Alice* step 1.

---

[4] The patent prosecution history, of which Netflix itself asks the Court to take judicial notice, reveals that prior art had identified the source of the observed data. *See, e.g.*, Dkt. No. 50-2, at 4 (explaining that the prior art references "a guest operating system communicating with a device driver running within an isolated driver domain … [but not] determining, based on the communication … CPU utilization of the domain attributable to the virtual machine"). Netflix, in its briefing, does not suggest that the data inputs that each claim 1 utilizes are themselves new, but simply asserts that they were newly used for CPU usage monitoring purposes.

United States District Court
Northern District of California

### C.    Claim 1 of each of the Cherkasova patents does not recite an inventive concept.

Because claim 1 of the Cherkasova patents fails at *Alice* step one, the Court must "search for an 'inventive concept,'" an element that ensures the patent "amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (quoting *Mayo*, 566 U.S. at 72–73).

A claim does not pass muster at step two by "[s]tating an abstract idea while adding the words 'apply it with a computer.'" *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022). Notably, claim 1 of each patent neither requires, nor results in, any specialized technology. The specifications explain that they can be implemented using existing open-source Xen virtual machine. '424 Patent, 2:45-55, 9:55-60, 10:10-14, 15:10-14.

Netflix argues that its complaint contains factual allegations that the claims recite an inventive concept sufficient to create an issue of fact at *Alice* step 2. Specifically, Netflix argues that the claims provide technical improvements by:

> provid[ing] an unconventional use of incorporating resource requests data into attributing CPU usage to certain VMs. '424 Patent at 16:53-56, 16:58-62. Prior art systems only considered "the amount of CPU allocated by the scheduler for execution of a particular VM' ('424 Patent at 3:54-58), whereas the claimed invention describes attributing CPU utilization by the isolated driver domains in servicing VM resource requests (which previous systems ignored) by monitoring and assessing these specific resource requests. Because this data had not previously been integrated into a CPU utilization analysis, its unconventional use and arrangement of components to attribute CPU usage to certain VMs in the claimed methodology is not "well-understood, routine, and conventional" activity, but inventive.

Dkt. No. 50, at 12. In essence, Netflix contends that incorporating a different source of preexisting and available technological information to inform a preexisting metric is sufficiently inventive at *Alice*'s second step. But this merely describes the method's use of the abstract concept addressed at step 1, and an invention cannot survive step 2 by merely claiming use of a patent-ineligible concept. *See, e.g.*, *Killian*, 45 F.4th at 1380 (finding patent ineligible at step 2 because "[t]he additional steps in [ ] claim 1 do no more than instruct the practitioner to perform the abstract steps of gathering information" and analyzing that data on a computer); *Elec. Power Grp.*, 830

14

F.3d at 1355 ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users, ... by itself does not transform the otherwise-abstract processes of information collection and analysis."); *EcoFactor, Inc. v. Google LLC*, 757 F. Supp. 3d 978, 988 (N.D. Cal. 2024) ("[Plaintiff] argues that the patent improved conventional [technology systems] by applying the abstract idea of calculating and accounting for [certain data] in operating efficiency comparisons. But '[a] claim's 'use of the ineligible concept to which it is directed cannot supply the inventive concept.'" (quoting *Caselas, LLC v. VeriFone, Inc.*, No. 2023-1036, 2024 WL 2720092, at *3 (Fed. Cir. May 28, 2024)).

Netflix also argues that the "the claimed methods improve computer capabilities by more accurately attributing CPU utilization to each VM, thereby improving the operation of VMs themselves," citing the specification's suggestion that more accurate CPU utilization could allow the VM architecture to adapt to changes better and earlier, creating a more reactive system that is less prone to overload and capacity issues. It is certainly the case that, in the software patent context, a claim may often survive at step 2 if it offers a "technical solution to a problem unique to [a particular technological context]." *See BASCOM*, 827 F.3d at 1351. But, as previously explained, claim 1 of each patent speaks only to the gathering of information and the CPU utilization analysis itself, not to any subsequent steps that might be taken to solve a technical problem based on the information generated through the claimed method. Claim 1 of each patent provides no specific technical solution beyond the information gathering itself. The alleged inventive qualities recited in the specification are unclaimed and properly disregarded as untethered to the claim language. *See Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331–32 (Fed. Cir. 2017) ("Without an explanation [in the claims] of the 'mechanism' for 'how the result is accomplished,' this purported feature of the invention cannot supply an inventive concept."); *Intell. Ventures I LLC*, 838 F.3d at 1322 (suggesting that technological details set forth in the patent's specification and not set forth in the claims do not supply an inventive concept).

Claim 1 of each the Cherkasova patents attempts to patent "an abstract idea implemented on generic computer components, without providing a specific technical solution beyond simply using generic computer concepts in a conventional way." *BASCOM*, 827 F.3d at 1352. For that

United States District Court
Northern District of California

reason, claim 1 of each of the Cherkasova patents fails at both of *Alice*'s steps.

Defendants' motion to dismiss Netflix's claims of infringement of the '424 patent, '707 patent, and '891 patent is therefore granted. Dismissal is with prejudice and without leave to amend as to defendants' alleged infringement of claim 1 of each of the Cherkasova patents. Dismissal is with leave to amend as to the other allegedly infringed claims of the Cherkasova patents.

## II.    Claim 16 of the '893 patent is invalid under 35 U.S.C. § 101.

Defendants contend that Netflix also fails to state a claim for relief under the '893 patent because claim 16 is directed to a patent-ineligible subject matter.[5] That claim recites:

> A method for use in a system having plural physical machines that contain active virtual machines, comprising:
>
> receiving, at a load balancer, a request from a client;
>
> in response to the request, determining whether at least one additional virtual machine should be started up;
>
> in response to determining that at least one additional virtual machine should be started up, the load balancer sending at least one command to start up the at least one additional virtual machine in at least one of the physical machines;
>
> determining, by the load balancer, whether a workload loading of the active virtual machines and the [sic] at least one additional virtual machine has fallen below a threshold;
>
> in response to determining that the workload loading has fallen below the threshold, disabling a particular one of the active virtual machines and the at least one additional virtual machine;
>
> a placement controller selecting placement of the active virtual machines and the at least one additional virtual machines on the

---

[5] The parties again disagree about whether the court can treat claim 16 as representative. For the same reasons discussed above, the Court need not reach the question. Although the operative complaint alleges infringement under "at least" claims 1–11 and 16 of the '893 patent, it only contains factual infringement allegations regarding claim 16. The complaint itself alleges "[e]ach independent claim recites unique limitations not found in the others", FAC ¶ 68; and that "the dependent claims of the '893 Patent … recite additional and specific methods for optimizing the placement of virtual machines and accounting for changing 'conditions in physical machines that may benefit from virtual machines migrating between or among physical machines,'" *id.* ¶ 69. But there are no factual allegations explaining how defendants' accused products infringe these "unique" limitations or "additional and specific methods."

United States District Court
Northern District of California

physical machines to achieve a predefined policy;

computing, by the placement controller, indicators associated with corresponding plural different layouts of the active virtual machines and the at least one additional virtual machine on the physical machines, where the indicators provide information regarding performances of the corresponding layouts, and wherein each of the indicators is computed based on parameters associated with a corresponding one of the plural layouts;

comparing, by the placement controller, the indicators; and selecting, by the placement controller, one of the plural layouts based on the comparing.

### A. Claim 16 of the '893 patent is directed to a patent-ineligible subject matter.

Defendants argue that claim 16 of the '893 Patent is "directed to the abstract idea of allocating a workload across a plurality of resources."[6]

The Federal Circuit has held that "controlling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1327 (Fed. Cir. 2020) (citation omitted). Other software patents relating to allocating a workload have been found abstract and thus patent-ineligible. *See Appistry, Inc. v. Amazon.com, Inc.*, No. C15-311 MJP, 2015 WL 4210890, at *2 (W.D. Wash. July 9, 2015), *aff'd sub nom. Appistry, LLC v. Amazon.com, Inc.*, 676 F. App'x 1007 (Fed. Cir. 2017) ("The patents-in-suit recite the abstract idea of distributed processing akin to the military's command and control system, a longstanding and intuitive practice used by many large hierarchical organizations that value speed, efficiency, reliability, and accountability."); *Coho Licensing LLC v. Glam Media, Inc.*, No. C 14-01576 JSW, 2017 WL 6210882, at *6 (N.D. Cal. Jan. 23, 2017), *aff'd sub nom. Coho Licensing LLC v. Oath Inc.*, 710 F. App'x 892 (Fed. Cir. 2018) ("[S]ubject patents lack any inventive concept that transforms the abstract idea of divide-and-conquer distributive computer processing into patentable subject matter.").

---

[6] Defendants articulated multiple versions of the abstraction at issue in their motion, but clarified in its reply that it relies on this characterization.

United States District Court
Northern District of California

1    Defendants argue that claim 16 merely recites turning virtual machines on and off based on

2   load and choosing a "layout" that determines which virtual machines run on which physical

3   computers. Defendants argue that the abstract idea of managing a workload (such as virtual

4   machines and the requests they handle) across a system of computing resources is the sort of

5   technique that can be done mentally by a person or using pen and paper, and that a human user

6   could monitor requests to a system and increase or decrease the number of virtual machines used

7   to process those requests and decide where to place them.

8    Netflix responds that "[n]either bakeries nor humans could track and assess the layout of

9   VMs in even a simple system as well as the performance and characteristics of the underlying

10   physical machines simultaneously and migrate VMs accordingly." As Netflix points out, the '893

11   Patent itself explains that, even for preexisting computers, "the computation time for identifying

12   the optimal placement of virtual machines can be very large." '893 Patent at 6:23-25.

13    Netflix further argues that

14        The '893 Patent provides a technical solution to [the patent's
       identified] power-consumption and "placement" problem by
15       identifying "an optimal solution for placement of virtual machines on
       physical machines." To solve those problems, the '893 Patent
16       recognized that not all physical servers have the same properties,
       power, use, or efficiency, and the claimed invention solved for these
17       disparities by accounting for the conditions of the underlying
       machinery itself. *Id.* at 6:14-17. For example, migrating VMs between
18       physical machines improved load conditions and enabled reduced
       power consumption. The '893 Patent Claims achieve this by reciting
19       "selecting placement of the active virtual machines and the at least
       one additional virtual machines on the physical machines to achieve
20       a predefined policy," using "indicators associated with corresponding
       plural different layouts" of VMs that "provide information regarding
21       performances of the corresponding layouts," and then comparing the
       indicators in selecting a layout. *Id.* at 12:26-58; 12:44-47. The
22       predefined criteria according to the predefined policy includes
       physical characteristics of the underlying servers, such as criteria
23       related to loading, balancing, cooling, or power. *Id.* at 4:19-31. After
       selecting the layout of the VMs, the claims recite migrating the VMs
24       from one physical machine to another. *Id.* at 4:40-46. In this way, the
25       '893 Patent Claims provide a technical solution to the technical
       problem of managing VMs operating on the underlying physical
26       machines, which optimizes power consumption and load balancing,
       rendering the claims nonabstract.

27

28

Dkt. No. 50, at 16.

The problem with Netflix's argument is that the "optimal" placement is not claimed by the invention, nor are any of the specific criteria related to loading, balancing, cooling, or power that might be used to determine the optimal placement of virtual machines. Though the claim itself refers to "indicators", "thresholds", "predefined policy", and "parameters", it includes no specifics and does not require any optimization of the placement of VMs on servers. Netflix points to the specification, which it says discloses and informs the "indicators", "thresholds", "predefined policy", and "parameters" that are referenced in claim 16. But, as defendants correctly explain:

> Although the specification identifies a "placement problem," its discussion of how to solve this problem refers to specific techniques, including a "simulated annealing algorithm" that uses a "cost function" and weights to iteratively adjust placements until an "approximated optimal solution is identified." None of these techniques are recited in any of the claims of the patent. Nor are the "loading, balancing, cooling, or power" criteria Netflix relies on recited in the claim[ ].

"Ultimately, the § 101 inquiry must focus on the language of the Asserted Claims themselves, and the specification cannot be used to import details from the specification if those details are not claimed. Even a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims." *ChargePoint*, 920 F.3d at 769 (cleaned up). Given the lack of detail in claim 16 itself, the claim could preempt load-balancing or workload management of virtual machines based on *any* "indicators", "thresholds", "predefined policy", or "parameters", not just those detailed in the specification. The claims other courts found patent ineligible in *Coho* and *Appistry* similarly lacked "specific or detailed ideas about the mechanism" of the distributed computing approach. *Coho, Inc.*, 2017 WL 6210882, at *6.[7]

Because claim 16 of the '893 patent recites nothing more specific than the abstract idea of

---

[7] Even the claim found eligible at issue in *Cirba Inc. v. VMware, Inc.*, No. CV 19-742-GBW, 2023 WL 2989049 (D. Del. Apr. 18, 2023), the case that lends Netflix the most support, recited "technical business and workload constraints" rather than just, as here, a "predefined policy" with no particularization whatsoever. *Id.* at *2.

United States District Court
Northern District of California

1    allocating virtual machine work across a plurality of physical resources, it is directed to a patent-

2    ineligible subject matter at *Alice* step 1.

3        **B.**    **Claim 16 of the '893 patent does not recite an inventive concept.**

4        In arguing that claim 16 survives *Alice*'s second step, Netflix relies heavily on the

5    unclaimed criteria and policies described only in the patent specification. According to Netflix,

6    that claim:

7    
8            go[es] beyond merely claiming "generic computer functions" …
recit[ing] a nine-step process for implementing a specific and

9            technical solution to address the power consumption and placement
problems that preexisted in load-balancing VM systems, including

10           previously unknown techniques to do so. For instance, the claimed
placement controller uses parameters to set "an unconventional or

11           unbalanced layout of virtual machines" and provides an inventive
concept by addressing "changes in conditions in the physical

12           machines that may benefit from virtual machines migrating between
or among physical machines." The '893 Patent Claims do not preempt

13           all ways of implementing the so-called focus of "managing the
workload of physical machines running VMs," but provide a specific

14           process and novel criteria for doing so.

15           The patent specification explains how the claims provide a technical

16           improvement over then-existing methods of VM management. The
specification explains the invention addresses a "complex problem"

17           that is solved by, in part, using a "cost function," i.e., a "goodness
factor," that considers multiple criteria to find a more optimal VM

18           configuration. … In the '893 Patent, claim terms like the "predefined
policy," "indicators," and "threshold," are important elements of the

19           technical solution and should be considered in light of the
specification.

20   

21   Dkt. No. 50, at 19–20 (cleaned up). As Netflix's discussion makes clear, criteria and techniques

22   contained only in the patent specification are critical to the claimed invention's alleged technical

23   solution, which purportedly "address[ed] the power consumption and placement problems that

24   preexisted in load-balancing." Netflix asks the Court to consider the details in the specification in

25   identifying the inventive concept, citing *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15

26   F.4th 1091 (Fed. Cir. 2021), which noted that "whether particular claim limitations are abstract or,

27   as an ordered combination, involve an inventive concept that transforms the claim into patent

28   eligible subject matter, must be decided on a case-by-case basis in light of the particular claim

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1    limitations, patent specification, and invention at issue." *Id.* at 1099.

2         Although the specification is relevant in determining inventiveness, *CosmoKey* illustrates

3    *how* the patent specification should be considered in the *Alice* inquiry. In that case, the Court

4    referenced the patent specification's description of "how the particular arrangement of steps in

5    claim 1 provides a technical improvement over conventional" methods. *CosmoKey Sols. GmbH &*

6    *Co. KG*, 15 F.4th at 1099; *see also Skillz Platform Inc.*, 2022 WL 783338, at *7 ("[C]ourts have

7    found that technical advantages described in the specification can be a significant indication of

8    eligibility."). Contrary to Netflix's position here, the *CosmoKey* court did not read details from the

9    specification into the claim language. To the contrary, the Federal Circuit has held that "[t]o save a

10   patent at [*Alice*] step two, an inventive concept must be evident *in the claims*." *Two-Way Media*

11   *Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (citing

12   *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017)) (emphasis added). *See*

13   *also Intell. Ventures I LLC*, 838 F.3d at 1322; *Accenture Glob. Servs., GmbH v. Guidewire*

14   *Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[T]he level of detail in the specification

15   does not transform a claim reciting only an abstract concept into a patent-eligible system or

16   method.").

17        Here, the inventive concept identified by Netflix in support of its step 2 argument is not

18   evident in the claim language, and the Court cannot read the specification's unclaimed details into

19   the claim. The claim language itself merely recites generalized steps for allocating virtual machine

20   work across a plurality of physical resources to be performed on a computer using conventional

21   computer activity. For that reason, claim 16 of the '893 patent does not contain an inventive

22   concept.

23        Defendants' motion to dismiss Netflix's claims of infringement of the '893 patent is

24   therefore granted. Dismissal is with prejudice and without leave to amend as to defendants'

25   alleged infringement of claim 16. Dismissal is with leave to amend as to other allegedly infringed

26   claims of the '893 patent.

27   **III.    Claim 10 of the '122 patent is invalid under 35 U.S.C. § 101.**

28        Defendants contend that Netflix also fails to state a claim for relief under the '122 patent

because claim 10 is directed to a patent-ineligible subject matter.[8] That claim recites:

A method, comprising:

> providing a first graphical user interface (GUI) from a host computer to a remote computer, the first GUI displaying on the remote computer a list of a plurality of virtual machines and to enable a user of the remote computer to select one of the virtual machines from the list as well as an action to be performed on the selected virtual machine, the selected action to be performed on the selected virtual machine independent of the other of the plurality of virtual machines;

> receiving user input from the remote computer via the first GUI, the user input including a selection of a virtual machine and an action to be performed on the selected virtual machine;

> in accordance with the user input, performing the action using the host computer on the selected virtual machine; and

> generating a second GUI to enable the user of the remote computer to select a virtual machine from the plurality of virtual machines to which a hardware peripheral device accessible to the remote computer is to be mapped;

> wherein said action is selected from the group consisting of starting, stopping, re-booting and shutting down.

**A.    Claim 10 of the '122 patent is directed to ineligible abstract subject matter.**

Defendants argue that claim 10 is directed to "the abstract idea of providing a graphical user interface" (GUI). Netflix argues that this description is overbroad, and that the claim is instead directed to "specific technological methods for establishing a network interface between a host computer and remote VMs to facilitate the management and control of remote VMs using a GUI provided by a host computer, and further, generating a GUI that allows mapping of a hardware peripheral device to the remote computer."

To support its description, Netflix argues that the claim recites specific technical solutions and improvements addressing technical problems associated with controlling remote VMs. As

---

[8] The parties again dispute whether the Court can treat claim 10 as representative and, again, the Court need not reach the question. Although the operative complaint alleges infringement under "at least" claims 10–11 of the '122 patent, it contains factual infringement allegations relating only to claim 10. The complaint alleges that "the dependent claims of the '122 Patent … recite additional and specific for managing and controlling virtual machines,'" FAC ¶ 79, but there are no factual allegations suggesting how defendants' accused products infringe these "additional and specific methods."

United States District Court
Northern District of California

explained by the patent specification, then-existing remote management systems enabled control of only physical server hardware but not any VMs associated with the server hardware. '122 Patent at 4:4-7. Complex VM environments could include a single computer hosting multiple VMs that were designed by different entities and often had different interfaces. *Id.* at 1:16-20, 2:53-63. As a solution to this problem, the '122 Patent discloses "a single, universal interface" used to "control multiple VMs on multiple servers." *See, e.g.*, *id.* at 2:24-33, 4:15-24; 6:12-24. Netflix asserts that the '122 Patent claims are not abstract because they recite improvements to prior art systems by providing "an improved GUI to remotely control the server, thereby enabling improved control of multiple remote VMs and providing for 'hardware peripheral devices to be mapped to a server.'" Defendants respond that "the broad idea of providing a user interface to remotely control multiple virtual machines or map hardware peripheral devices is not a technical improvement to computer functionality."

Even under Netflix's construction, in which Claim 16 is directed to "providing a user interface to remotely control multiple virtual machines or map hardware peripheral devices," the claim is directed to an abstract and patent-ineligible subject matter. Claims directed to generic GUIs are often found be abstract. *See Broadband iTV, Inc. v. Amazon.com, Inc.*, No. 6:20-CV-00921-ADA, 2022 WL 4703425, at *13 (W.D. Tex. Sept. 30, 2022), *aff'd*, 113 F.4th 1359 (Fed. Cir. 2024). The fact that this claim is directed to a GUI that can permit particular functions, such as remote management or hardware mapping, makes it no less abstract. First, remotely controlling (i.e., starting up and shutting down devices) and mapping/connecting peripherals involve abstract concepts, as does performing those functions through a GUI. *Cf. ChargePoint*, 920 F.3d at 770, 766 (finding abstract the "idea of communication over a network to interact with a device" even where the claim recited using the remote server to "turn electric supply on and off"). While the claim allegedly improves on the prior art by allowing remote management and mapping *of VMs*, "limiting the use of an abstract idea"—here GUIs, mapping, and remote management—"to a particular technological environment" is not enough for patent eligibility. *Alice*, 573 U.S. at 223.

Second, looking to the claim language, it is apparent that the recited remote control and mapping of the VMs is abstract. The claim describes a client request being input through the GUI

1    to the host computer of the selected VM to perform an "action [ ] selected from the group

2    consisting of starting, stopping, re-booting and shutting down," but there is no claimed detail for

3    how such actions will actually be performed on the VM. Additionally, the claim merely recites

4    that VMs are "to be mapped." This results-oriented language renders said remote-control and

5    mapping abstract. *See Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1381 (Fed.

6    Cir. 2022); *Skillz Platform Inc.*, 2022 WL 783338, at *6.

7         The cases Netflix cites in support of eligibility are inapposite. The claim at issue here does

8    not involve a specific improvement to the user interface itself, such as a change to the size and

9    location of the user interface, *Core Wireless Licensing S.A.R.L.*, 880 F.3d at 1362–63, or recite a

10   "specific method for navigating through three-dimensional electronic spreadsheets," *Data Engine

11   Techs*, 906 F.3d at 1008. The claim does not recite any improved structure or function within the

12   GUI, VMs, or technology, but rather a results-oriented abstract idea. *See Broadband iTV, Inc.*, 113

13   F.4th at 1368–69. For that reason, claim 10 of the '122 patent is directed to a patent-ineligible

14   subject matter.

15         **B.    Claim 10 of the '122 patent does not recite an inventive concept.**

16         Netflix argues that the claim is sufficiently inventive at step two because "[u]nlike other

17   remote management systems, the embodiments … enable a remote user to use the GUIs to control

18   not only the physical hardware of the server, but also the VMs." '122 Patent at 4:4-14. "[A]n

19   inventive concept exists when a claim recites a specific, discrete implementation of the abstract

20   idea where the particular arrangement of elements is a technical improvement over the prior art."

21   *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 534 (Fed. Cir. 2020) (quoting

22   *BASCOM*, 827 F.3d at 1350) (cleaned up). Claim 10 contains no such specific, discrete

23   implementation of the abstract idea. As discussed above, it merely claims abstract results with no

24   specified details for accomplishing the results, reciting, for example, that "a hardware peripheral

25   device accessible to the remote computer is to be mapped," and that "wherein said action is

26   selected from the group consisting of starting, stopping, re-booting and shutting down". As

27   defendants point out, the specification makes clear that "service processing logic communicat[ing]

28   with the agent" "facilitates[s] this functionality." '122 Patent at 4:7-9. "Thus, the interfacing

between the service processing logic and the agent enables GUIs generated by the service processing logic to be usable to control the VMs." *Id.* at 4:11-14; *see also id.* at 2:28-33; 6:60-7:14, 8:25-30. But these features are not included in claim 10, which makes no mention of the "service processing logic" at all and includes no other detail for how the functions it recites are carried out. "'Without an explanation [in the claim] of the 'mechanism' for 'how the result is accomplished,' this purported feature of the invention cannot supply an inventive concept." *See Intell. Ventures I LLC*, 850 F.3d at 1331–32.

Additionally, the patent specification makes clear that remote management systems and mapping existed and were conventional activities in the prior art. '122 Patent at 4:4-7; 8:29-30 (discussing use of "known techniques"). As explained above, limiting the use of an conventional, abstract idea—here, GUIs, mapping, and remote management—"to a particular technological environment" (here, VMs) is not enough for patent eligibility. *Alice*, 573 U.S. at 223. Accordingly, the claim does not recite an inventive concept.

Defendants' motion to dismiss Netflix's claims of infringement of the '122 patent is therefore granted. Dismissal is with prejudice and without leave to amend as to defendants' alleged infringement of claim 10. Dismissal is with leave to amend as to other allegedly infringed claims of the '122 patent.

## CONCLUSION

For the reasons discussed herein, the claims for which Netflix has provided factual allegations supporting its claims of infringement—claim 1 of the '424, '707, and '891 patents; claim 16 of the '893 patent; and claim 10 of the '122 patent—are invalid because they are directed to patent-ineligible concepts under 35 U.S.C. § 101. Dismissal is with prejudice and without leave to amend as to defendants' alleged infringements of these claims of the asserted patents. Dismissal is with leave to amend as to any other allegedly infringed claims of the asserted patents. Any amended complaint shall be filed within 28 days of this order.

Because there is no longer an operative complaint pending before the Court, the Court stays all discovery until such time as defendants file an answer to any amended complaint. The Court vacates the August 14, 2025 Initial Case Management Conference and any existing

deadlines—except the deadline for an amended complaint—set forth in the Federal Rules of Civil Procedure, this Court's Local Civil or Patent Rules, or any order of this Court. The August 14, 2025 hearing on defendants' motion for a reduction of asserted claims is vacated. Defendants may re-notice that motion for hearing after the stay on discovery has been lifted.

**IT IS SO ORDERED.**

Dated: August 8, 2025

P. Casey Pitts
United States District Judge